Joshua P. Davis (SBN 193254)
Kyla J. Gibboney (SBN 301441)
Julie A. Pollock (SBN 346081)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Tel: (800) 424-6690
jdavis@bm.net
kgibboney@bm.net
jpollock@bm.net

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH BUJOLD, Individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| WELLS FARGO & COMPANY and WELLS FARGO CLEARING SERVICES, LLC, dba WELLS FARGO ADVISORS, | |
| Defendants. | |

Plaintiff Keith Bujold ("Plaintiff"), on behalf of himself and all others similarly situated whose cash in accounts custodied by defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors ("WFA"), a wholly-owned subsidiary of its control person, defendant Wells Fargo & Company ("Wells Fargo") (together "Defendants"), was subject to the Wells Fargo Advisors' Cash Sweep Program, alleges as follows against Defendants, based on personal knowledge as to Plaintiff and his own acts, and otherwise on information and belief, based on the investigations of his counsel, which included a review of documents created and distributed by Defendants, SEC filings, and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff believes that discovery will further support the allegations in this class action complaint.

## I.      INTRODUCTION

1.      This case arises out of a cash sweep program implemented by WFA, whereby uninvested cash balances in a customer's account are automatically "swept" and transferred by WFA into interest-bearing bank accounts discretionarily selected by WFA (the "Bank Deposit Sweep Programs," or "Programs," consisting primarily of the "Standard Bank Deposit Sweep" and "Expanded Bank Deposit Sweep") or, in some instances, other sweep arrangements made available to WFA customers. This action concerns only the Bank Deposit Sweep Programs and not any other sweep arrangements.

2.      Pursuant to the terms of the Programs, customer cash is swept into accounts held with banks both affiliated with WFA ("Affiliated Banks"), and not affiliated with WFA ("Unaffiliated Banks") (together the "Program Banks"). WFA implemented the Bank Sweep Programs ostensibly to offer its customers a vehicle to hold cash that offers FDIC insurance on those cash deposits.

3.      Upon opening an account with WFA, customers were automatically enrolled in the Bank Sweep Programs, and upon enrollment in the Programs such customers were unable to select any bank deposit cash sweep options which might have offered better terms than those made available by WFA.

CLASS ACTION COMPLAINT
Case No.

4.      While claiming to have designed, implemented and operated the Bank Sweep Programs as its customers' agent, in reality, WFA used the Bank Sweep Programs to generate enormous fees for itself at the expense of its customers who receive only a minimal return on their cash deposits, while WFA keeps for itself the vast majority of interest and fees the Program Banks paid out on the cash deposited by WFA's customers with those Banks.

5.      In its agreement with its customers, WFA specifically acknowledges that it is a fiduciary vis-a-vis its customers for purposes of the Programs, as the agreements state that WFA purports to act as its customers' "***agent***" not only as when making deposits of customer money into the Program banks, but also, crucially, when establishing and maintaining the Bank Deposit Sweep Programs. WFA's actions in designing, implementing, and operating the Bank Deposit Sweep Programs to benefit itself at the expense of its customers constitutes a breach of the fiduciary duties that WFA owes to its customers, the members of the proposed Class here including the Plaintiff, and constitute a breach of the contract that WFA entered into with those customers. Furthermore, WFA utilizes material misrepresentations and the omission of key facts concerning its Bank Deposit Sweep Programs to obscure from its customers how the Programs truly operate.

6.      Over the past several months, WFA's conduct has finally begun to draw regulatory scrutiny. In November 2023, WFA disclosed an investigation by the SEC concerning its Bank Sweep Programs for certain types of accounts. Then in July 2024, WFA announced that it will be changing the pricing of its Bank Sweep Programs to pay customers a higher rate of interest. According to WFA, the price changes will likely cost Defendants an estimated $350 million in yearly revenue, evidence of the massive windfall the Programs provide to Defendants at the expense of WFA's customers.

7.      Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals for breach of fiduciary duty, gross negligence, negligent misrepresentations, breach of contract, and unjust enrichment to recover damages arising out of WFA's violations of the law, and for such other relief as the Court may deem just and proper.

## II.    JURISDICTION AND VENUE

8.    This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1332(d)(2), as this action is brought as a class action on behalf of class members, one or more members of the class are citizens of a state different than the Defendants, and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

9.    The Court has personal jurisdiction over Defendants because Wells Fargo, WFA's parent company and control person, has it principal place of business and is headquartered in this District, regularly transacts business in California, and thus has minimum contacts in California and in this District.

10.    Venue is proper under 28 U.S.C. § 1391 because among other things, defendant Wells Fargo maintains its headquarters in this District, defendant WFA has offices in this District, and a substantial part of the events, omissions, and/or relevant conduct by Defendant giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

### A.    Plaintiff

11.    Keith Bujold ("Plaintiff), is a customer of WFA and a resident of New Mexico. Plaintiff has been a customer of WFA since at least 2014 and opened accounts with WFA in which cash was held in varying amounts over the course of the life of the accounts. At all relevant times, the cash held in Plaintiff's accounts was automatically "swept" into low-interest bearing bank accounts pursuant to the Programs – accounts for which WFA ultimately received fees and returns on investments far higher than what was paid out to Plaintiff.

### B.    Defendants

12.    Defendant Wells Fargo is a financial services company headquartered in this District at 420 Montgomery Street, San Francisco, California 94101. Wells Fargo describes itself as a leading financial services company that provides a diversified set of banking, investment and mortgage products and services, as well as consumer and commercial finance through banking locations and offices, the internet and other distribution channels to individuals, businesses, and

institutions in all 50 states, the District of Columbia and in countries outside the U.S. Wells Fargo is named as a defendant herein in its capacity as the parent company and control person of Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors.

13.   Defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors is a dually registered broker-dealer and Registered Investment Advisor or "RIA" that offers brokerage and investment advisory services to its nationwide client base. Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC. Defendant offers brokerage services to Plaintiff and members of the proposed Class, acting as its customers' agent regarding the establishment, maintenance, and operation of the Programs. Wells Fargo Clearing Services, LLC dba WFA is a majority-owned subsidiary of defendant Wells Fargo. In its BrokerCheck reports filed with the Financial Industry Regulatory Authority ("FINRA"), Wells Fargo Clearing Services states that it is 75% or more owned by Wells Fargo, and that as owner, Wells Fargo directs the management or policies of the firm.

## IV.   FACTUAL BACKGROUND

### A.   The Bank Deposit Sweep Programs Were Established by WFA for Its Own Benefit, Not That of Its Customers'

14.   Under the Bank Deposit Sweep Programs, available cash balances in WFA customers' accounts are automatically swept into interest-bearing accounts at either Affiliated Banks or Unaffiliated Banks.

15.   The Bank Deposit Sweep Programs consist of two separate but similar programs: the Expanded Bank Deposit Sweep and the Standard Bank Deposit Sweep, all of which are discretionarily selected by WFA.

16.   The Expanded Bank Deposit Sweep is the primary option for eligible clients and operates by sweeping customers' cash balances into interest-bearing deposit accounts at one of five banks (the "Program Banks"). These Program Banks are a collection of both Affiliated and

Unaffiliated Banks. Under the Expanded Bank Deposit Sweep, customers are precluded from excluding the Affiliated Banks as a destination for their cash balances.

17.     Certain customers, specifically those with "Resource" accounts and retirement accounts in WFA's discretionary advisory programs, cannot elect the Expanded Bank Deposit Sweep and are restricted to the Standard Bank Deposit Sweep as their Bank Deposit Sweep Program.

18.     The Standard Bank Deposit Sweep operates by sweeping customers' cash balances into interest-bearing deposit accounts at two or more WFA Affiliated Banks.

19.     Each business day, available cash balances in all eligible customer accounts are swept out of the accounts and into one of the Program Banks, depending on which sweep type the account qualifies for and the capacity of the Banks to accept additional deposits.[1]

20.     Customers' account statements indicate their cash sweep balance and show interest or dividends which reflect their returns from the Bank Deposit Sweep Programs.

21.     WFA, acting as its customers' "agent", according to the terms of its contracts with its customers, was legally and duty bound to establish and maintain the Bank Deposit Sweep Programs in the best interests of its customers, not itself.

22.     The contractual terms and conditions of WFA's relationship with its customers, including regarding the Cash Sweep Program, are governed and controlled by the General Account Agreement and Disclosure Document (the "Account Agreement"), and the Wells Fargo Advisors' Cash Sweep Program Disclosure Statement (the "Cash Sweep Program Disclosure Statement"). As explained by the Account Agreement, "the Cash Sweep Program is described more fully in the Cash Sweep Program Disclosure Statement which is included with this Agreement."

23.     The Cash Sweep Program Disclosure Statement defines the relationship between WFA and its customers regarding the Bank Deposit Sweep Programs as follows:

---

[1] Certain commercial and public fund account types are ineligible for either Bank Deposit Sweep Program and are instead placed in a taxable money market fund. Those accounts are not a subject of the present action and are excluded from the Class.

Wells Fargo Advisors *will act as your agent in establishing and maintaining the Bank Deposit Sweep Programs*, including making deposits to and withdrawals from the Bank Deposit Sweep Programs. Your first deposit into the Standard Bank Deposit Sweep or Expanded Bank Deposit Sweep *will constitute your appointment of Wells Fargo Advisors as your agent in connection with the Standard Bank Deposit Sweep or Expanded Bank Sweep*.

(*Emphases supplied*).

24.     As its customers' agent, WFA was legally bound to act in the best interest of those customers.

25.     Thus, under the express terms of the Cash Sweep Program Disclosure Statement, WFA, acting as its customers' agent in connection with *establishing and maintaining, and thereafter operating, the Bank Deposit Sweep Programs*, was duty bound to establish, maintain, and operate the Bank Deposit Sweep Programs in the best interests of its principals, i.e., its customers such as Plaintiff and the members of the proposed Class.

26.     Notwithstanding, WFA established, maintained, and operated the Bank Deposit Sweep Programs for its own best interests, contrary to the interests of its customers/member of the proposed Class here, as set forth in more detail below.

27.     WFA's actions *vis-a-vis* the Bank Deposit Sweep Programs breached its contract with its customers and the fiduciary duties it owed to those customers.

28.     More specifically, the Programs were structured as follows.  As the first step, the Affiliated Banks—i.e., *banks affiliated with WFA*—purportedly "set" the rate of interest that would be paid to its customers under the Programs "in consultation" with WFA. WFA does not "negotiate" on its customers' behalf to try and obtain the best rates of interest for them; rather, it "consult[s]" with its Affiliated Banks, i.e., that is, it agrees and acquiesces to the rates set by WFA's affiliates regardless of whether those terms are in its customers' best interest. Indeed, the rates that WFA sets in consultation with its Affiliated Banks are far below the rates WFA customers could have otherwise earned on their cash in the marketplace.

CLASS ACTION COMPLAINT
Case No.

29.     As a second step, WFA uses the artificially low rates it sets with its Affiliated Banks as a benchmark. It then "directs" the Unaffiliated Banks to pay its customers the same low benchmark rate WFA set with its Affiliated Banks.

30.     WFA and its Affiliated Banks keep the difference between the artificially low rates WFA pays to its customers and what the Affiliated Banks actually pay or earn, and WFA keeps for itself the difference between the artificially low rate WFA pays to its customers and what the Unaffiliated Banks actually offer and/or pay.

31.     By establishing and maintaining the Programs in this fashion, and thereafter agreeing with its Affiliated Banks to set an artificially low rate to pay its customers, then using that low rate as a benchmark for what WFA's customers receive from the Unaffiliated Banks, and keeping the difference for itself, WFA breached its fiduciary duties to its customers as their agent, and also breached its contract with those customers that it would act as their agent, not for its own benefit. WFA's process created a clear conflict of interest that WFA fails to properly disclose or mitigate.

32.     As a result of this self-interested process established and maintained by WFA, WFA's customers receive the same low rates on their cash balances in their WFA accounts from all Program Banks. Conversely, WFA retains the majority of the returns generated by its customers' cash balances, in the form of fees it collects for itself from the beneficial payments it receives from the Program Banks for its customers' cash deposited with those Banks.

33.     Moreover, WFA states that it "assumes no obligation to seek or negotiate interest rates in excess of any reasonable rate of interest the Affiliated Banks are willing to credit," but it omits to disclose that the "reasonable" designation is false and mischaracterizes the interest rates offered by the Affiliated Banks. Indeed, those rates are anything but reasonable and, as stated above, WFA compounds the harm by directing the Unaffiliated Banks to pay WFA's customers those same, unreasonably low rates that the Affiliated Banks pay.

34.     In contrast to the unreasonable returns WFA pays its customers, WFA retains as fees for itself a substantial portion of the beneficial returns on each of its customers' cash, which

CLASS ACTION COMPLAINT
Case No.

portion is not disclosed to its customers, and instead is described as an "up to" calculation applicable in the aggregate to all customer cash deposited with the Program Banks, such that no individual customer can ascertain WFA's fees on that customer's cash sweep.

35.     WFA exercises discretion, in its capacity as the agent of its customer, as to the Programs and its key features, including designing, establishing and maintaining the Programs, selecting the Program Banks, agreeing to the rates of return for its customers' cash, making a reasonability determination as to the rates paid by its Affiliated Banks, deciding how much its customers will receive in interest on their cash in the Cash Sweep Programs, and deciding how much WFA will keep for itself in fees for its role in the Cash Sweep Programs.

**B.     WFA's Disclosures to Its Customers Regarding the Bank Deposit Cash Sweep Programs Contained Material Misrepresentations and Omissions.**

36.     WFA made material misrepresentations and omitted material information when describing the Bank Deposit Sweep Programs to its fiduciary customers. Then, in late 2023, following a number of lawsuits filed against WFA's competitors arising out of those competitors' cash sweep programs, WFA *changed* some of its disclosures regarding the Programs.[2] While the amended disclosures made in late 2023 were still inadequate and contained material misrepresentations and omissions regarding the Programs, the changes reflect an acknowledgement by WFA that its prior disclosures surrounding the Bank Deposit Cash Sweep Program were not adequate.

37.     For example, in the section titled "Rate of Return," the 2019–2023 Disclosure Statements stated the following:

> These rates will vary over time and ***may be lower*** than rates available to clients making deposits directly with the Program Banks or at other banks.

(Emphasis supplied throughout this section unless otherwise indicated).

---

[2] The 2023 changes were carried forward to the 2024 Disclosure Statement and were repeated therein verbatim.

CLASS ACTION COMPLAINT
Case No.

38.     The above statement omitted to disclose that the rates WFA paid its customers were ***always*** lower than the customer could obtain by making deposits directly with the Program Banks or at other banks.

39.     Then, in late 2023, following lawsuits filed against some of WFA's competitors, WFA changed the above disclosure to read:

> These rates will vary over time and ***are typically lower*** than rates available to clients making deposits directly with the Program Banks or at other banks.

40.     The late 2023 amended disclosures continued to include material omissions about the Programs ("typically" does not mean "always"). Notwithstanding, the change reflects an acknowledgement by WFA that its prior disclosures were inadequate.

41.     Similarly, in a section titled "Benefits to Wells Fargo and Others," the 2019 – 2023 Disclosure Statements stated:

> Higher rates of interest than the rates credited by the Affiliated Banks on Expanded Bank Deposit Sweep deposits ***may be*** available outside of the Cash Sweep Program.

42.     The above statement omitted to disclose that the rates credited by the Affiliated Banks on Expanded Deposit Sweep deposits were ***always*** lower than the customer could obtain by making deposits outside of the Cash Sweep Programs, as a result of the fact that WFA and the Affiliated Banks retained a substantial part of the credit for themselves.

43.     From late 2023 forward, that same section of the Disclosure Statements noted that other cash investment options "***typically*** pay you higher rates of interest," which remained misleading as "typically" does not mean "always."

44.     Similarly, the 2019–2023 Disclosure Statements represented that:

> We and the Program Banks ***may*** pay rates of interest on the Expanded Bank Deposit Sweep that are lower than the prevailing market interest rates.

45.     The above statement was misleading in that the rates of interest paid under the Programs were *always significantly lower* than prevailing market rates. Moreover, for 2023 forward, the Disclosure Statements made the following revelation:

> The Program Banks pay rates of interest on the Bank Deposit Sweep Program deposits **that are significantly less** than the spread those banks earn on deposits.

46.     The Disclosure Statements omitted additional material information. For example, in its 2019–2023 Disclosure Statements, WFA simply stated "[y]ou may elect not to participate in the Cash Sweep Program and/or periodically invest cash balances directly in available money market mutual funds or other products offered as direct investments outside of the Cash Sweep Program," but failed to disclose to its fiduciary customers – whom it had automatically placed in the Programs – that they **would** earn a higher rate of return had they chosen other options for their cash balances.

47.     Starting with its late 2023 Disclosure Statements, WFA changed the disclosures above to its fiduciary customers to read:

> You may elect not to participate in the Cash Sweep Program and/or periodically invest cash balances directly in available money market mutual funds or other products offered as direct investments outside of the Cash Sweep Program, **options which likely generate a higher rate of interest or yield** than the Cash Sweep Program.

48.     In addition, the following material information was entirely omitted from the 2019 – 2023 Disclosure Statements:

> **The interest rates paid to client accounts in the Bank Deposit Sweep Program are deducted from these payments, and Wells Fargo Advisors retains the remainder.** Accordingly, Wells Fargo Advisors has an incentive to pay lower interest rates to participating accounts. **Note that the fee Wells Fargo Advisors receives from the Program Banks usually exceeds the interest paid to participating client accounts by a substantial amount. Moreover, due to the contractual arrangements in place between the Unaffiliated Banks and Wells Fargo Advisors, the rates paid out to clients will be substantially lower than the Federal Funds Effective Rate and will not increase as quickly as the Federal Funds Effective Rate.**

CLASS ACTION COMPLAINT
Case No.

49.     Those disclosures, added in late 2023, still omitted material information in that WFA failed to disclose to each of its fiduciary customers the amount of fees it was keeping for itself from their beneficial returns paid by the Program Banks on their account balances, and also failed to disclose that the fees WFA received from the Program Banks *always* exceeded the interest paid to participating client accounts by a substantial amount.

50.     Finally, defendant WFA falsely described the rate of return provided to its fiduciary customers on their cash assets as "reasonable," when in fact it was not. As a result, WFA's fiduciary customers were left entirely uniformed of the spread between the returns generated by their own cash and the minimal payments they ultimately received on those cash balances and were not in a situation to give informed consent regarding WFA's Cash Sweep Programs.

### C.     WFA Breaches Its Contract with Its Customers by Failing to Obtain Reasonable Rates of Interest for Their Cash Assets as Well.

51.     In its contract with its customers that governs the Cash Sweep Programs, WFA undertook a duty to negotiate "reasonable" rates of return on its customers' cash balances, and thus it was contractually required to do so.

52.     However, the rates agreed to by WFA for its customers were not reasonable. This is because WFA agreed to allow its Affiliated Banks to pay unreasonable rates to WFA's customers, and then directed the Unaffiliated Banks to pay the same unreasonable rates.

53.     Further, despite not possessing an ownership interest in its customers' beneficial returns on their cash balances deposited with the Program Banks, WFA misused its fiduciary relationship with its customers to retain a substantial portion of those funds for its own benefit.

54.     In so doing, WFA breached its contract with its customers related to the Cash Sweep Program.

### V.     Class Action Allegations

55.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

CLASS ACTION COMPLAINT
Case No.

56.     Plaintiffs bring this action individually and as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class consisting of: All persons who held cash positions in accounts custodied by WFA, and whose cash was subject to defendant WFA's Programs from 2018, until defendant WFA's unlawful conduct alleged herein ceases.

57.     Excluded from the Class are governmental entities, institutional and other non-retail investors; Defendants and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiff and the proposed Class, including other attorneys and staff at each respective firm.

58.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

59.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

### Numerosity

### Rule 23(a)(1)

60.     Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. However, defendant WFA's wealth management services oversee nearly $1.9 trillion in client assets through the work of approximately 12,000 financial advisors, and Plaintiff believes that the members of the proposed Class number in the thousands. Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

**Existence and Predominance of Common Questions of Law and Fact**

**Rule 23(a)(2), 23(b)(3)**

61.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

    a.   Whether defendant WFA owed fiduciary duties to Plaintiff and the putative Class members in connection with the Programs;

    b.   Whether defendant WFA breached its duties to Plaintiff and the putative Class members in establishing, maintaining, and/or operating the Programs;

    c.   Whether defendant WFA made material misrepresentations and/or omissions to Plaintiff and the putative Class members regarding the Programs;

    d.   Whether defendant WFA breached its contract with Plaintiff and the putative Class members regarding the Programs;

    e.   Whether defendant WFA was unjustly enriched by its wrongful conduct;

    f.   Whether this case may be maintained as a class action under Fed. R. Civ. P. 23;

    g.   Whether and to what extent Class members are entitled to damages and other monetary relief; and

    h.   Whether and to what extent Class members are entitled to attorneys' fees and costs.

**Typicality**

**Rule 23(a)(3)**

62.     Plaintiff's claims are typical of the claims of the Class because he was a customer of Defendant that had his cash balances improperly managed by WFA through its administration of the Bank Deposit Sweep Programs. Thus, Plaintiff's claims are typical of the claims of the members of the Class as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the members of each.

CLASS ACTION COMPLAINT
Case No.

**Adequacy of Representation**

**Rule 23(a)(4)**

63.     Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

**Superiority**

**Rule 23(b)(3)**

64.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them.

65.     Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

66.     Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

    a.   The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

    b.   The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

**FIRST CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

67. Plaintiff repeats and incorporates by reference the preceding factual allegations as if fully set forth herein.

68. At all relevant times, defendant WFA owed fiduciary duties to Plaintiff and the members of the Class in connection with the Programs. Such duties independently arose out of (1) the agency relationship between defendant WFA, on one hand, and Plaintiff and the members of the Class on the other hand, as to the Programs; (2) defendant WFA's holding and control over beneficial funds that belonged to its customers, related to their cash sweep balances; and/or (3) the applicable industry standards. As a fiduciary to Plaintiff and the Class, defendant WFA owed them the highest duties of loyalty, candor, due care, and prudence in as to the services it provided to them in connection with establishing, maintaining, and/or operating the Programs. Moreover, as a fiduciary, defendant WFA had a continuing duty to act exclusively for the benefit of Plaintiff and the Class in connection with establishing, maintaining, and/or operating the Programs. Lastly, as a fiduciary, defendant WFA had a continuing duty to obtain *informed* consent from Plaintiff and the Class regarding the Programs.

69. Defendant WFA further owed Plaintiff and the Class the fiduciary duty to act in good faith in connection with establishing, maintaining, and/or operating the Programs.

70. Defendant WFA further owed Plaintiff and the Class the duty to charge reasonable fees for its services related to the Programs.

71. Plaintiff and the Class were fully dependent upon defendant WFA's ability, skill, knowledge, and goodwill with respect to Defendant WFA's Programs.

72. Defendant Wells Fargo owed Plaintiff and the Class similar duties by virtue of its control over defendant WFA's policies or management with regard to the Programs.

73.     Defendants breached their fiduciary duties by the conduct alleged herein, including by designing, structuring, and/or operating the Programs to benefit itself at the expense of its fiduciary customers, making material misrepresentations and omissions regarding the Programs, violating its duty of care, and acting in its own – not its customers' – best interest *vis-à-vis* the Programs.

74.     Defendants violated their duty of loyalty by, among other things, putting their interest above that of their fiduciary customers, failing to provide sufficient information to their fiduciary customers regarding material features of the Programs to obtain ***informed*** consent from them, and not properly disclosing their own conflicts of interest arising out of the Programs, as more fully shown above.

75.     As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial, and seek disgorgement of any undue and unjust gains of Defendants, punitive damages, as well as all other equitable relief deemed just and proper.

76.     Defendants' conduct warrants a punitive damage award because defendant has been guilty of oppression, fraud, and/or malice, engaged in conduct that is outrageous, and exhibited reckless indifference to the rights of its customers. Defendants engaged in misrepresentation and/or concealed material facts known to the defendant with the intention on its part of thereby depriving its customers, including Plaintiff and the proposed Class, of property and/or legal rights or otherwise causing injury, as more fully stated above.

## SECOND CAUSE OF ACTION
### GROSS NEGLIGENCE

77.     Plaintiff realleges and incorporates by reference the preceding factual allegations as if fully set forth herein.

78.     Defendant WFA owed Plaintiff and the putative Class, all of whom were its fiduciary customers vis-a-vis the Programs, certain duties related to its establishment, maintenance, and operation of the Programs.

79.     Those duties arose out of (1) the agency relationship between defendant WFA, on one hand, and Plaintiff and the members of the Class on the other hand, as to the Programs; (2) defendant WFA's holding and control over beneficial funds that belonged to its customers, related to their cash sweep balances; and (3) the applicable industry standards.

80.     WFA's duties to its customers included establishing, maintaining, and/or operating the Programs for the benefit of WFA's customers, not for WFA's own benefit; negotiating reasonable interest rates for its customers' cash with the Program Banks; and charging reasonable fees for its Program-related services. Moreover, defendant WFA had a duty make sufficient disclosures to its customers regarding the Programs as needed for those customers to give ***informed*** consent regarding the Programs.

81.     Defendant Wells Fargo owed Plaintiff and the Class similar duties by virtue of its control over defendant WFA's policies or management with regard to the Programs.

82.     Defendants breached their duties by the conduct alleged herein, including by designing, structuring, and/or operating the Programs to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Programs, violating their duty of care, acting in their own – not their customers' – best interest *vis-à-vis* the Programs, failing to negotiate reasonable interest rates for its customers' cash with the Program Banks, and failing to charge reasonable rates for their services.

83.     Defendants were not merely negligent; as more fully shown above, they were grossly negligent because their self-serving conduct showed the want of even scant care and/or was an extreme departure from the ordinary standard of conduct.

84.     Defendants' gross negligence directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## **THIRD CAUSE OF ACTION**
## **NEGLIGENT MISREPRESENTATIONS AND OMISSIONS**

85. Plaintiff repeats and re-alleges each of the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

86. Defendants were Plaintiff's agent in connection with the Programs and owed Plaintiff a duty of care *vis-a-vis* the Programs.

87. Defendants, in their Cash Sweep Disclosure Documents, with gross negligence omitted material information and made material misrepresentations to its customers about the Programs.

88. Defendants' material misrepresentations and omissions concerned critical details of the Programs, including the specific amounts of fees or compensation that defendant received on each of its fiduciary customers' cash deposited in the Program Banks, key features of the Programs as more fully described above including the returns offered by the Programs on WFA customers' cash, the reasonableness of the interest rates received by the customers, Defendants' conflicts of interest, the magnitude of defendant's fees and benefits derived from its customers' cash and beneficial returns on such cash, and the resulting harm this caused to Plaintiff and the proposed class.

89. Plaintiff and the proposed Class justifiably relied on Defendants' representations and omissions regarding the Programs and accordingly maintained cash balances in their WFA accounts to their detriment.

90. Defendants' grossly negligent misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## **FOURTH CAUSE OF ACTION**
## **UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

91. Plaintiff realleges and incorporates by reference the preceding factual allegations as if fully set forth herein.

CLASS ACTION COMPLAINT
Case No.

92.     In the alternative, Defendants have received and retained a benefit from Plaintiff and the members of the proposed Class, and inequity has resulted.

93.     Defendants benefited through their unjust conduct by sweeping available cash balances from their customers' accounts in the Program into bank accounts selected for the benefits they offered to defendant WFAs, not their customers, and retained most of the interest generated by those cash balances.

94.     Plaintiff alleges that it is inequitable for Defendants to retain these benefits.

95.     Plaintiff alleges that because of Defendants' conduct, the amount of their unjust enrichment should be disgorged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT (IN THE ALTERNATIVE)

96.     Plaintiff repeats and realleges each of the factual allegations in the forgoing paragraphs as if fully set forth herein.

97.     Plaintiff asserts this cause of action for breach of contract in the alternative.

98.     Defendant WFA's relationship with its customers is governed by a written contract, the terms of which are contained in, and incorporated into various standardized documents drafted by defendant.

99.     One such document is the Cash Sweep Program Disclosure Statement. To become a customer of Defendants, each member of the proposed Class must agree to the terms of this document.

100.    Pursuant to the Cash Sweep Program Disclosure Statement, Defendants were and continue to be contractually obligated to obtain for Plaintiff and members of the proposed Class rates of return on their cash balances that are reasonable and to otherwise act as an agent of the customers in the establishment, maintenance, and operation of the Programs.

101.    As set forth herein, the fees charged by Defendants for the administration of the Programs were excessive and the rates of return paid to customers on their cash balances were not

reasonable. Accordingly, Defendants breached their contracts with Plaintiff and the members of the proposed Class.

102.    Plaintiff and the members of the proposed Class were harmed by Defendants' breach.

### SIXTH CAUSE OF ACTION
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW
### GBS § 349 – DECEPTIVE ACTS AND PRACTICES UNLAWFUL

103.    Plaintiff repeats and realleges each of the allegations in the forgoing paragraphs as if fully set forth herein.

104.    The agreement between the parties giving rise to this action was deemed to have been made in the State of New York, and Defendants selected the New York law as the law applicable to the agreement.

105.    In the state of New York, deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service are unlawful.

106.    The acts and practices of Defendants as alleged herein constitute "deceptive" business acts and practices under GBS § 349(a) as the conduct is misleading in a material way and that plaintiff and the Class have been injured by reason thereof.

107.    Plaintiff alleges that Defendants have, in the course of their business and the course of trade or commerce, undertaken and engaged in unfair business acts and practices under GBS § 349(a) by, among other things, using their Programs to generate substantial revenue for themselves with its customers' cash and beneficial returns on such cash, while paying their customers only a small fraction of those returns and concealing from such customers the amounts of those customers' interest that they retained for themselves and the fact that those amounts represented the vast majority of such interest. Defendants have further engaged in material misrepresentations and omissions regarding key features of the Programs.

108.    The deceptive business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiff and the members of the proposed Class in that

CLASS ACTION COMPLAINT
Case No.

Defendants systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

109.    As a result of Defendants' misrepresentations and omissions of material facts concerning the Programs, Plaintiff and the members of the proposed Class have suffered an ascertainable loss of money, property, and/or value and were harmed and suffered actual damages.

110.    Had Plaintiff and the members of the proposed Class been aware of defendant WFA's conduct regarding its customer cash in the Programs, Plaintiff and the members of the proposed Class would not have participated in those investment products or would have done so on different terms.

111.    The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility.

112.    The harm from Defendants' conduct was not reasonably avoidable by Plaintiff and the members of the proposed Class because only Defendants were aware of the true facts concerning the Programs, and Defendants did not disclose these facts, or did not sufficiently disclose them.

113.    Plaintiff and the members of the proposed Class have suffered injury in fact and have lost money as a direct and proximate result of Defendants' business acts or practices. Monies lost by Plaintiff and members of the proposed Class include, without limitation, the beneficial returns on cash positions from the Programs that defendant WFA improperly withheld from Plaintiff and members of the proposed Class in the form of money as fees for defendant WFA, as set forth above.

114.    Through their unfair conduct, Defendants acquired money that Plaintiff and the members of the proposed Class were entitled to.

115.    Plaintiff and the members of the proposed Class accordingly seek appropriate relief under GBS § 349, including (a) in the alternative, restitution in full and disgorgement of all profits relating to the above-described unfair business acts or practices, and (b) such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair practices.

116.    Plaintiff, on behalf of himself and the members of the proposed Class also seek reasonable attorneys' fees and costs under applicable law, including GBS § 349(h).

<b>PRAYER FOR RELIEF</b>

Plaintiff requests relief as follows:

        A.      Actual damages;

        B.      Punitive damages;

        C.      Injunctive relief prohibiting Defendants from continuing to engage in the conduct alleged herein;

        D.      Attorneys' fees and costs of suit;

        E.      Prejudgment interest; and

        F.      Such other relief as the Court deems just and proper.

<b>DEMAND FOR JURY TRIAL</b>

Plaintiff demands a trial by jury on all claims so triable.

DATED: July 30, 2024                    Respectfully submitted,

                                    */s/ Joshua P. Davis*
                                    Joshua P. Davis (SBN 193254)
                                    Kyla J. Gibboney (SBN 301441)
                                    Julie A. Pollock (SBN 346081)
                                    BERGER MONTAGUE PC
                                    505 Montgomery Street, Suite 625
                                    San Francisco, CA 94111
                                    Tel: (800) 424-6690
                                    jdavis@bm.net
                                    kgibboney@bm.net
                                    jpollock@bm.net

                                    Michael Dell'Angelo*
                                    Andrew D. Abramowitz*
                                    BERGER MONTAGUE PC
                                    1818 Market Street, Suite 3600
                                    Philadelphia, PA 19103
                                    Tel: (215) 875-3000
                                    mdellangelo@bm.net
                                    aabramowitz@bm.net

Alan L. Rosca, Esq.* (OH 0084100)
Jonathan A. Korte, Esq.* (FL 126450)
ROSCA SCARLATO LLC
2000 Auburn Dr. Suite 200
Beachwood, OH 44122
Telephone: (216) 946-7070
E-mail: arosca@rscounsel.law
            jkorte@rscounsel.law

Paul J. Scarlato, Esq.* (PA 47155)
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216) 946-7070
E-mail: pscarlato@rscounsel.law

* *pro hac vice* forthcoming

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
Case No.

### <u>ATTESTATION</u>

Pursuant to Civil L.R. 501(h)(3), the undersigned attests that each of the other Signatories have concurred in the filing of the document.

Dated: July 30, 2024

By: <u>/s/ Joshua P. Davis</u>
Joshua P. Davis (SBN 193254)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Tel: (800) 424-6690
jdavis@bm.net