1  Eric H. Gibbs (SBN 178658)
   Rosemary M. Rivas (SBN 209147)
2  David Stein (SBN 257465)
   Linda P. Lam (SBN 301461)
3  Rosanne L. Mah (SBN 242628)
4  **GIBBS LAW GROUP LLP**
   1111 Broadway, Suite 2100
5  Oakland, California 94607
   (510) 350-9700 (tel.)
6  (510) 350-9701 (fax)
7  ehg@classlawgroup.com
   ds@classlawgroup.com
8  rmr@classlawgroup.com
   rlm@classlawgroup.com
9
   Brian E. Johnson (admitted *pro hac vice*)
10 **GIBBS LAW GROUP LLP**
   211 N. Union St., Suite 100
11 Alexandria, VA 22314
   (510) 350-9700 (tel.)
12 (510) 350-9701 (fax)
   bej@classlawgroup.com
13

14 *Attorneys for Plaintiffs Daniel Varady, Daniel Gruber, and*
15 *Karen Schreiman*

16
17 ### UNITED STATES DISTRICT COURT FOR THE
   ### NORTHERN DISTRICT OF CALIFORNIA
18

19
20 *In Re Wells Fargo Cash Sweep Litigation*

21

22 This Document Relates to:

23 *Varady v. Wells Fargo & Co., et al.,*
   Case No. 3:24-cv-04917-VC
24

25

26

27

28

Case No. 3:24-cv-04616-VC

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.     NATURE OF ACTION ...................................................................................... 1

II.    PARTIES ........................................................................................................... 2

III.   JURISDICTION AND VENUE ........................................................................ 3

IV.    CHOICE OF LAW ........................................................................................... 3

V.     FACTUAL ALLEGATIONS ............................................................................ 3

       A.    Background on Cash Sweep Accounts ................................................... 3

       B.    Wells Fargo's Cash Sweep Program ..................................................... 6

             1.    Interest Rates for Wells Fargo's Self-Managed Accounts ............ 9

             2.    Interest Rates for Wells Fargo's Advisory Accounts .................. 12

       C.    Wells Fargo's Duties to Plaintiffs and Class Members ....................... 14

             1.    Contractual Duties .................................................................. 14

             2.    Duties Imposed on Wells Fargo by Law .................................. 15

       D.    Wells Fargo Breached Its Legal and/or Contractual Duties to Its Customers ........... 16

             1.    Wells Fargo's Rates are Substantially Lower than Its Competitors' Rates ....... 17

             2.    Money Market Funds ............................................................... 19

       E.    Plaintiffs' Experiences ........................................................................ 19

VI.    CLASS ACTION ALLEGATIONS ................................................................ 20

VII.   CAUSES OF ACTION .................................................................................... 23

       COUNT ONE: BREACH OF FIDUCIARY DUTY ....................................... 23

       COUNT TWO: GROSS NEGLIGENCE ........................................................ 24

       COUNT THREE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
            DEALING ............................................................................................. 25

       COUNT FOUR: BREACH OF CONTRACT .................................................. 26

       COUNT FIVE: UNJUST ENRICHMENT ..................................................... 27

PRAYER FOR RELIEF ............................................................................................. 28

DEMAND FOR JURY TRIAL .................................................................................. 28

TABLE OF CONTENTS

Plaintiffs Daniel Varady, Daniel Gruber, and Karen Schreiman, individually and on behalf of all others similarly situated, allege the following based on their personal experience and their counsel's investigation:

## I. NATURE OF ACTION

1. This proposed class action suit against Defendants Wells Fargo & Company and Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo Advisors (collectively, "Wells Fargo" or "Defendants") arises out of Wells Fargo's actions and conduct with respect to the cash sweep program it operates.

2. Wells Fargo automatically enrolls retail customers with uninvested cash in their brokerage accounts in what is known as a "cash sweep" account. The Wells Fargo cash sweep accounts at issue in this case are the Wells Fargo Standard Bank Deposit Sweep and the Wells Fargo Expanded Deposit Sweep (collectively, the "Wells Fargo Sweep Program"). The program was designed, created, and developed by Wells Fargo and it does not provide any other types of sweep vehicles for its retail customers' uninvested cash.

3. Plaintiffs and Class members are retail customers with advisory (or discretionary) and self-managed (non-discretionary) brokerage accounts, including retirement accounts, with Wells Fargo. Plaintiffs and Class members' uninvested cash was automatically swept into interest-bearing accounts with Wells Fargo affiliated banks, pursuant to the Wells Fargo Sweep Program. At all relevant times, Wells Fargo had legal and/or contractual duties to Plaintiffs and the proposed Class to obtain reasonable rates on their uninvested cash.

4. In operating the Wells Fargo Sweep Program, however, Wells Fargo breached its legal and/or contractual duties to Plaintiffs and Class members. Wells Fargo caused Plaintiffs' and Class members' uninvested cash to be deposited with program banks that pay unreasonable rates of return, sometimes as low as .02%, but paid Wells Fargo significant and higher fees at the expense of Wells Fargo customers. In contrast, Wells Fargo competitors paid interest rates as high as 5%. As a result of its practices, Wells Fargo generated massive revenues for itself while paying its customers a pittance.

FIRST AMENDED CLASS ACTION COMPLAINT

5. Plaintiffs allege that Wells Fargo's conduct was unlawful, as alleged in further detail below, and on behalf of themselves and all others similarly situated, allege claims for breach of fiduciary duty, breach of contract, gross negligence, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiffs seek all available monetary and equitable relief, including damages, restitution, an injunction, and all other appropriate relief.

## II.    PARTIES

6. Plaintiff Daniel Varady is a resident and citizen of Scotch Plains, New Jersey.

7. Plaintiff Daniel Gruber is a resident and citizen of Le Sueur, Minnesota.

8. Plaintiff Karen Schreiman is a resident and citizen of Redondo Beach, California.

9. Defendant Wells Fargo & Company ("Wells Fargo") is a Delaware corporation, headquartered at 420 Montgomery Street, San Francisco, California 94101. Wells Fargo & Company is a leading financial services company with assets of approximately $1.9 trillion and office locations around the world. Wells Fargo & Company touts itself as a company that "proudly serves consumers" and "partners with our customers to help them achieve their financial goals[.]" Wells Fargo is named as a defendant in its capacity as the parent company and control person of Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors.

10. Defendant Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors is a Delaware corporation, headquartered at One North Jefferson Avenue, St. Louis, Missouri 63103. Wells Fargo Advisors is a dually registered broker-dealer and registered investment advisor that offers brokerage and investment advisory services to its nationwide client base. Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC. Wells Fargo Advisors provides brokerage services to Plaintiffs and Class members, acting as its customers' agent regarding the establishment, maintenance, and operation of the Wells Fargo Sweep Program. Wells Fargo Clearing Services, LLC is a majority-owned subsidiary of Defendant Wells Fargo & Company. In BrokerCheck reports filed with the Financial Industry Regulatory Authority ("FINRA"), Wells Fargo Clearing Services states that it is 75% or more owned by Wells Fargo & Company, and that as owner, Wells Fargo & Company directs the management or policies of the firm.

### III. JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least one hundred members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which one or more members of the proposed Class, including Plaintiffs, are citizens of a state different from Defendants. The Court has supplemental jurisdiction over the alleged state law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

12.    This Court may exercise jurisdiction over Defendants because at least one defendant is headquartered in this District; both have sufficient minimum contacts in this District; and intentionally avail themselves of the markets within this District through the promotion, sale, and marketing of their services, thus rendering the exercise of jurisdiction by this Court proper and necessary.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because at least one Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims emanated from this District.

### IV. CHOICE OF LAW

14.    New York law governs Plaintiffs' and Class members' claims by virtue of the choice of law provision selecting New York law in the General Account Agreement and Disclosure Document.[1]

### V. FACTUAL ALLEGATIONS

#### A. Background on Cash Sweep Accounts

15.    A "cash sweep" or "sweep" account is typically linked to a brokerage account and holds uninvested money, such as the initial cash deposits into a brokerage account before the cash is invested in a security or cash customers prefer to remain uninvested. The uninvested cash is

---

[1] https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf (last accessed September 27, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT

"swept" into an interest-bearing account to ensure that the cash is not sitting idly not generating income.

16.    Today, cash sweep programs work by automatically "sweeping" uninvested cash each day into one or more banks that are usually affiliated with the brokerage firm. Historically, uninvested client cash sat with brokerage firms on their balance sheets, but in the 1960s, brokerage firms started depositing the cash with banks in the form of certificates of deposit. In early 2000, Merrill Lynch began offering the type of sweep accounts or programs that are available today and later other brokerage firms, like Charles Schwab, did the same.

17.    The Security and Exchanges Commission ("SEC") defines a sweep program as a "service provided by a broker or dealer where it offers to its customers the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." 17 C.F.R. 240.15c3-3(a)(17).

18.    Brokerages like Wells Fargo have significant discretion in the creation of their cash sweep programs. For example, they can create money market funds as the sweep vehicles for their customers' uninvested cash. They also have discretion regarding the banks that they partner with.

19.    Brokerage firms collectively hold around $1 trillion dollars at any given time in uninvested cash. The amount of uninvested client cash that Wells Fargo holds is not publicly available, but Wells Fargo reported approximately $100 billion in total deposits from its Wealth and Investment Management division in Q2 2024 and earnings of over $900 million in net interest income.[2]

20.    Brokerage firms and affiliated banks earn significant net interest income (or "spread")—that is, the difference between the rate of interest earned by custodians loaning and investing the sweep deposits and the interest paid to brokerage customers.

21.    The amount of money that brokerage firms earn under their sweep programs are based on their agreements with the banks they partner with to run their cash sweep programs. The

---

[2] https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/second-quarter-10q.pdf (last accessed September 27, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT

agreements generally provide compensation to the brokerage firms based on the average daily deposits at the affiliated banks, and the total compensation is generally based on the Federal Funds Rate plus basis points.

22.     For some time, Federal Fund rates—the interest rate at which banks lend each other money and which is set by the Federal Open Market Committee—were low and so it was expected that earned interest on cash sweeps would be low. But in 2022, however, the Federal Funds Rate increased considerably as the following chart shows:

| YEAR | AVE. YIELD | YEAR HIGH | YEAR LOW | YEAR CLOSE | ANNUAL % CHANGE |
|------|-----------|-----------|----------|------------|-----------------|
| 2022 | 1.68%     | 4.33%     | 0.08%    | 4.33%      | 6085.71%        |
| 2023 | 5.03%     | 5.33%     | 4.33%    | 5.33%      | 23.09%          |
| 2024 | 5.33%     | 5.33%     | 5.33%    | 5.33%      | 0.00%           |

23.     With the rise of the Federal Fund Rate, banks increase yields and so brokerages should have been able to negotiate higher rates of return on uninvested cash.

24.     Unfortunately, that has not been the case with some firms, including Wells Fargo. Instead, Wells Fargo places sweep deposits with affiliated and non-affiliated banks that it negotiates with to pay less than reasonable interest rates to customers and more net interest income for itself.

25.     The SEC has stepped up its investigation into brokerage cash sweep programs, including Wells Fargo. In a Wells Fargo & Company filing in October 2023, the company disclosed that the SEC "has undertaken an investigation regarding the cash sweep options that the company provides to investment advisory clients at account opening."[3]

26.     And in a quarterly report filed on August 1, 2024, Wells Fargo again disclosed the SEC investigation into its cash sweep program.

27.     Morgan Stanley reported a similar investigation in a quarterly earnings report: "Since April 2024, the firm has been engaged with and is responding to requests for information

---

[3] https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2023/third-quarter-10q.pdf (last accessed September 27, 2024).

from the Enforcement Division of the SEC regarding advisory account cash balances swept to affiliate bank deposit programs and compliance with the Investment Advisers Act of 1940[.]"[4]

28.     As described in Part C below, brokerage firms owe a fiduciary duty to act in the best interests of their customers, including with respect to their clients' uninvested cash holdings.

**B.     Wells Fargo's Cash Sweep Program**

29.     Wells Fargo designed and developed the Wells Fargo Sweep Program in a manner that puts its financial interests above that of Wells Fargo customers and generates massive revenues for itself at the expense of Wells Fargo customers. Wells Fargo had discretion in how to structure and implement the Wells Fargo Sweep Program.

30.     For example, Wells Fargo could have created a money market fund as a cash sweep vehicle for Wells Fargo's retail customers' uninvested cash. In fact, it has such an option for its institutional clients—such as government agencies, municipalities, or insurance and mutual fund companies.[5] Unlike some of its competitors, Wells Fargo does not provide an alternative sweep avenue beyond depositing its retail customers' uninvested cash into low interest-bearing deposit accounts with banks affiliated with the Wells Fargo Sweep Program.[6]

31.     Under the program currently, Wells Fargo automatically assigns all its retail customers to one of two different cash sweep accounts by default based on the type of account the customer has. The first program is the Wells Fargo Standard Bank Deposit Sweep ("SBDS) for resource and retirement accounts in Wells Fargo's discretionary advisory program, and the second program is the Wells Fargo Expanded Bank Deposit Sweep ("EBDS"), which is the default option for new investment accounts (collectively referred to as the "Wells Fargo Sweep Program").

32.     There are generally two types of Wells Fargo customers, advisory clients and self-managed clients. Advisory clients are clients with brokerage accounts managed by Wells Fargo; that is, Wells Fargo makes the decision on what stocks to buy and sell, while self-managed

---

[4] https://www.morganstanley.com/content/dam/msdotcom/en/about-us-ir/shareholder/10q0624.pdf (last accessed September 27, 2024).
[5] https://saf.wellsfargoadvisors.com/emx/dctm/Marketing/Marketing_Materials/ Cash_Management/e7381.pdf (last accessed September 27, 2024).
[6] https://www.wellsfargo.com/investing/cash-sweep/ (last accessed September 27, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT

customers are responsible for their own buying and selling decisions. Regardless of whether the Wells Fargo customer has an advisory or self-managed account, their uninvested cash is automatically swept into an interest-bearing deposit account with a bank partner in the Wells Fargo Sweep Program.

33.     Pursuant to the Wells Fargo Sweep Program, Wells Fargo opens the interest-bearing deposit accounts with pre-selected bank partners. Those banks are identified on Wells Fargo's Priority List of Program Banks, many of which are Wells Fargo affiliated banks and are set forth below[7]:

| Expanded Bank Deposit | Standard Bank Deposit |
|---|---|
| Non-Retirement Accounts | Non-Retirement & Retirement Accounts |
| Wells Fargo Bank, N.A. | Wells Fargo Bank, N.A. |
| Wells Fargo Bank South Central, N.A. | Wells Fargo Bank South Central, N.A. |
| Wells Fargo National Bank West | Wells Fargo National Bank West |
| Citibank, N.A. | |
| BNY Mellon, N.A. | |
| US Bank, N.A. | |
| State Street Bank & Trust Company | |
| Goldman Sachs Bank USA | |
| UBS Bank USA | |
| Retirement Accounts | |
| Wells Fargo Bank, N.A. | |
| Wells Fargo Bank South Central, N.A. | |
| Wells Fargo National Bank West | |
| Tristate Capital Bank | |
| BNY Mellon, N.A. | |

34.     Wells Fargo has complete control over which banks are part of its program and has control over the rates that the non-affiliated banks pay. Regardless of whether a customer's deposit is made with an affiliated or unaffiliated bank, the interest rates are set by Wells Fargo's affiliated banks based on negotiations with Wells Fargo.

35.     Wells Fargo explains as much in its Cash Sweep Program Disclosure Statement: "**Wells Fargo Advisors will direct** and otherwise cause the **unaffiliated Program Banks** participating in the Expanded Bank Deposit Sweep program **to credit interest** on their respective

---

[7]https://www.wellsfargoclearingservicesllc.com/pdf/program-banksFC.pdf (last accessed September 27, 2024).

deposits **at the same rate then being credited by the affiliated Program Banks**."[8] (Emphasis added).

36. The SBDS and EBDS are not just the only recommended sweep vehicles for Wells Fargo customers' uninvested cash, they are the only available cash sweep vehicles for retail customers. Wells Fargo retail customers are offered no alternative cash sweep vehicles, such as a money market fund, when opening an account or afterwards.

37. The terms of the Wells Fargo Sweep Program are set forth in the Wells Fargo General Account Agreement and Disclosure Document, which incorporates the terms of the Cash Sweep Program Disclosure Statement (together "Brokerage Agreement").[9] There are additional terms for retirement accounts in the document titled, "Traditional Individual Retirement Account Disclosure Statement and Custodial Agreement" (hereafter, "Retirement Custodial Agreement").

38. The Brokerage Agreement states:

> **When you open your account**, or you select an ineligible Cash Sweep Option, **your Cash Sweep Option will be** (and any cash balances will be transferred to) **the primary Cash Sweep Option for your account type**. You may contact us at any time to select a different Cash Sweep Option available for your account type. … If you decide to enroll in a new product or service that doesn't offer your current Cash Sweep Option, your new Cash Sweep Option will become the Expanded Bank Deposit Sweep **if you are eligible (if not, your Cash Sweep Option will be an available Money Market Fund selected by us**) unless you select a different available Cash Sweep Option.[10] (Emphasis added).

39. Although the Brokerage Agreement talks about eligibility for various Cash Sweep Options, the only sweep vehicles recommended by Wells Fargo and made available to its retail customers are the SBDS and EBDS. Only institutional investors can utilize the Money Market Fund Option, which is unavailable for retail clients.[11]

[8] https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (last accessed September 27, 2024).
[9] https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf (last accessed September 27, 2024).
[10] https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (last accessed September 27, 2024).
[11] https://saf.wellsfargoadvisors.com/emx/dctm/Marketing/Marketing_Materials/ Cash_Management/e7381.pdf (last accessed September 27, 2024).

40.     So, while Wells Fargo has complete control over which of its customers are eligible for its Money Market Fund cash sweep vehicle, it chooses not to provide retail customers with that option.

41.     The Brokerage Agreement, however, obligates Wells Fargo to provide interest rates that are reasonable. While Wells Fargo assumes "no obligation to seek or negotiate interest rates *in excess of any reasonable rate* of interest the Affiliated Banks are willing to credit," this term commits it to obtaining a reasonable rate of interest, which is consistent with its roles as an agent and fiduciary of its clients as described below in Part C (emphasis added).[12]

42.     Similarly, the Retirement Custodial Agreement requires Wells Fargo to place IRA assets in deposits of Wells Fargo Bank, N.A. "that bear a reasonable rate of interest."[13]

**1.   Interest Rates for Wells Fargo's Self-Managed Accounts**

43.     For years and to this day, Wells Fargo has paid its self-managed customers unreasonably low interest rates. For example, in January of 2021, self-managed customers with uninvested cash in the Wells Fargo Sweep Program received only a 0.01% interest rate on their cash deposits—no matter the size of the deposit.[14]

44.     As the economy improved, and the Federal Funds Rate increased, Wells Fargo's rates increased a miniscule amount from June 2022 through September 2022 [15]:

Bank Deposit Sweep Rates as of 06/17/2022

| Household Assets | Interest Rate | Annual Percentage Yield |
| --- | --- | --- |
| $0 - $19,999,999 | 0.02% | 0.02% |
| $20,000,000 and up | 0.03% | 0.03% |

---

[12] https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf (last accessed Sept. 27, 2024).

[13] https://www.wellsfargoadvisors.com/bw/wellstrade/forms/544408.pdf (last accessed Sept. 27, 2024).

[14] https://web.archive.org/web/20220118041507/https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed September 27, 2024).

[15] https://web.archive.org/web/20220618181054/https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed September 27, 2024).

45.     While cash sweep rates increased again in February 2023, they were still unreasonably low[16]:

Bank Deposit Sweep Rates as of 02/02/2023

| Household Assets | Interest Rate | Annual Percentage Yield |
|---|---|---|
| $0 - $999,999 | 0.15% | 0.15% |
| $1,000,000 - $1,999,999 | 0.50% | 0.50% |
| $2,000,000 - $4,999,999 | 0.75% | 0.75% |
| $5,000,000 - $9,999,999 | 0.85% | 0.85% |
| $10,000,000 - $19,999,999 | 1.25% | 1.25% |
| $20,000,000 and up | 1.30% | 1.30% |

46.     But by April of 2024, Wells Fargo's rates dropped, even as the Federal Funds rate improved[17]:

Bank deposit Sweep Programs

Bank Deposit Sweep Rates as of 04/16/2024

| Household Assets | Interest Rate | Annual Percentage Yield |
|---|---|---|
| $0 - $999,999 | 0.05% | 0.05% |
| $1,000,000 - $1,999,999 | 0.15% | 0.15% |
| $2,000,000 - $9,999,999 | 0.25% | 0.25% |
| $10,000,000 and up | 0.50% | 0.50% |

---

[16] https://web.archive.org/web/20230203064910/https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed September 27, 2024).
[17] https://web.archive.org/web/20240417085758/https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed September 27, 2024).

47. Wells Fargo's cash sweep rates remained unreasonably low in September 2024:

## Bank deposit Sweep Programs

Bank Deposit Sweep Rates as of 09/18/2024

| Household Assets | Interest Rate | Annual Percentage Yield |
|---|---|---|
| $0 - $999,999 | 0.05% | 0.05% |
| $1,000,000 - $1,999,999 | 0.15% | 0.15% |
| $2,000,000 - $9,999,999 | 0.25% | 0.25% |
| $10,000,000 and up | 0.50% | 0.50% |

48. And on September 23, 2024, the interest rates paid to Wells Fargo's self-managed customers with cash sweep deposits dropped to the range of 0.02% to 0.20% after a cut to the Federal Funds Rate[18]:

## Bank deposit Sweep Programs

Bank Deposit Sweep Rates as of 09/23/2024

| Household Assets | Interest Rate | Annual Percentage Yield |
|---|---|---|
| $0 - $999,999 | 0.02% | 0.02% |
| $1,000,000 - $4,999,999 | 0.05% | 0.05% |
| $5,000,000 - $9,999,999 | 0.10% | 0.10% |
| $10,000,000 - $19,999,999 | 0.15% | 0.15% |
| $20,000,000 and up | 0.20% | 0.20% |

49. The unreasonableness of Wells Fargo's sweep rates is evident considering the national average interest rate on a savings account as of September 16, 2024, which was 0.46% according to the FDIC.[19]

---

[18] https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed September 25, 2024).
[19] https://www.fdic.gov/resources/bankers/national-rates (last accessed September 27, 2024).

50.     In contrast to Wells Fargo self-managed customers—who have earned low rates of return on their uninvested cash—Wells Fargo has earned significant net interest income from the Wells Fargo Sweep Program. In its June 2024 quarterly report, Wells Fargo reported over $900 million in net interest income in the second quarter of 2024 alone.[20]

51.     As the Federal Funds rate increased dramatically beginning in 2022, going from less than 1% to as high 5.3% in the middle of 2023, Wells Fargo customers should have seen interest rate increases for their uninvested cash in the Wells Fargo Sweep Program. But in fact, rates were flat or even decreased throughout the same period.[21]



## 2.  <u>Interest Rates for Wells Fargo's Advisory Accounts</u>

52.     Wells Fargo customers with advisory accounts also receive unreasonable rates of interest on their uninvested cash deposits in the Wells Fargo Sweep Program—although they may be slightly higher than Wells Fargo customers with self-managed accounts. The interest rates that Wells Fargo pays to its advisory customers (whose investment decisions are made by Wells Fargo) are not publicly disclosed by Wells Fargo the way it publishes cash sweep rates for self-managed accounts.

---

[20] https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/second-quarter-10q.pdf (last accessed September 27, 2024).

[21] Information available at https://www.newyorkfed.org/markets/reference-rates/effr.

FIRST AMENDED CLASS ACTION COMPLAINT

53.     Based on Plaintiffs' counsel's investigation, in 2023, Wells Fargo paid advisory clients an interest rate of 1% on uninvested cash in the Wells Fargo Sweep Program.

54.     The rates Wells Fargo pays advisory clients in the Wells Fargo Sweep Program are still unreasonably low and far below what its competitors, like JP Morgan, pay as explained more fully below.

55.     Wells Fargo's conduct, particularly in regard to its advisory clients, has led the SEC to investigate Wells Fargo's cash sweep practices.[22] After this revelation, Wells Fargo announced in a July 2024 earnings call that it was increasing the interest rates on the Wells Fargo Sweep Program for advisory clients so that its rates are closer to those for money market funds. Wells Fargo reported the change was likely to result in a loss of $350 million in revenue for the year.[23]

56.     Wells Fargo has earned massive revenues because it placed its interests above Plaintiffs and Class members' interests by placing cash sweep deposits with affiliated banks that pay little interest to customers but pays larger fees and net interest income to Wells Fargo. Wells Fargo was obligated to negotiate, at arm's length, a reasonable rate with the program banks. There are no provisions in the Brokerage Agreement that allow Wells Fargo to place its financial interests above its customers' best interests in this manner.

57.     In April 2023, FinancialPlanning reported on conflicts of interests arising from cash sweep programs and posed the following questions to Wells Fargo and other brokerage firms[24]:

a.      In terms of percentage points or basis points, what are the latest available figures for the yields to clients from sweep accounts and the yields to the firm?

b.      How would the firm explain this line of business to clients asking how it's in their best interest?

c.      How can financial advisors using your firm's brokerage and/or custodial services make use of higher-yield cash solutions for their clients?

---

[22] https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash (last accessed September 27, 2024).
[23] *Id.*
[24] https://www.financial-planning.com/list/cash-sweeps-checking-a-conflict-of-interest (last accessed September 27, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT

d.     What else should financial advisors know about your firm's cash sweep accounts?

58.     Wells Fargo either did not provide answers to FinancialPlanning or that could be publicly shared.

59.     While Wells Fargo customers receive artificially and unreasonably low interest rates on uninvested cash, Wells Fargo receives a larger share of the spread at its customers' expense. Had Wells Fargo obtained reasonable rates for its customers, however, it would have earned less. Wells Fargo put its financial interests ahead of that of its customers instead and was able to handsomely line its pockets with massive revenues.

60.     In failing to obtain reasonable rates for its customers, Wells Fargo breached its contractual and/or fiduciary obligations, as alleged and described herein.

### C.     Wells Fargo's Duties to Plaintiffs and Class Members

#### 1.     Contractual Duties

61.     The Wells Fargo Sweep Program was devised and operated by Wells Fargo. In doing so, Wells Fargo drafted the terms governing the Wells Fargo Sweep Program, and Wells Fargo is bound to fulfill its obligations under the contract it drafted.

62.     In operating its cash sweep program, Wells Fargo agreed to function as an agent on behalf of its clients in establishing their deposit accounts with the program banks. The Brokerage Agreement states that:

> Wells Fargo Advisors **will act as your agent in establishing and maintaining the Bank Deposit Sweep Programs**, including making deposits to and withdrawals from the Bank Deposit Sweep Programs. Your first deposit in the Standard Bank Deposit Sweep or Expanded Bank Deposit Sweep **will constitute your appointment of Wells Fargo Advisors as your agent** in connection with the Standard Bank Deposit Sweep or Expanded Bank Sweep. (Emphases added).

63.     Additionally, the Brokerage Agreement states that while Wells Fargo has "no obligation to seek or negotiate interest rates *in excess of any reasonable rate* of interest," it did obligate itself to negotiate, at arm's length, at least a reasonable interest for its clients.

64.     Thus, in establishing the cash sweep program, Wells Fargo was required to put the best interests of its customers first over its own interests and deposit the uninvested cash balances in accounts that earned reasonable interest rates.

65. Moreover, as brokers under the Brokerage Agreement, Regulation Best Interest ("Reg. BI") governs the scope of Wells Fargo's relationship with Plaintiffs and Class members. Reg. BI applies only to retail investors, i.e., natural persons, or their legal representatives, who receive recommendations primarily for personal, family, or household purposes. 17 C.F.R. § 240.15I-1(b)(1).

66. Pursuant to Reg. BI, in its role as a broker-dealer, Wells Fargo is required to act in its clients' best interests when it makes recommendations to them, "without placing the financial or other interest of the broker … ahead of the interests of the retail customer."

67. As agents and brokers and pursuant to contractual obligations, Wells Fargo was required to act in Wells Fargo's customers' best interests and not put its own personal gain ahead of its clients.

### 2. Duties Imposed on Wells Fargo by Law

68. In acting as an investment adviser on behalf of clients with actively managed advisory accounts, Wells Fargo owes its clients a fiduciary duty under federal law. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

69. Pursuant to these regulations, Wells Fargo was obligated to "serve the best interest of its client and not subordinate its client's interests to its own." *Id.* And Wells Fargo cannot "place its own interests ahead of the interests of its client." *Id.*

70. Wells Fargo customers are also owed a duty of care, and Wells Fargo is required to use its skills and expertise for the benefit of its clients.

71. Wells Fargo owes a similar duty of care to its retail clients pursuant Reg. BI, 17 C.F.R. § 240.15I-1.

72. Like the SEC's conduct rules, Reg. BI also requires Wells Fargo to "act in the retail customer's best interest and cannot place its own interests ahead of its customer's interests." 84 Fed. Reg. 33318, 33320.

73. Reg. BI "draw[s] on key principles underlying fiduciary obligations, including those that apply to investment advisers under the Advisers Act, while providing specific requirements to address certain aspects of the relationships between broker-dealers and their retail clients." 84 Fed. Reg. 33318, 33320 (July 12, 2019).

74. Additionally, for retirement accounts—advisory or self-managed—under 26 U.S.C. § 4975(d)(4), the investment of a retirement plan's full or partial cash assets in deposits must "bear a reasonable interest rate in a bank or similar financial institution," otherwise the deposit of uninvested cash from a retirement account into the Wells Fargo Sweep Program would be a prohibited transaction under Section 4975 of the Internal Revenue Code. This requirement ensures that transactions involving retirement accounts by related parties such as those between a plan sponsor like Wells Fargo and affiliated banks are made at fair market rates. This provision is specifically designed to protect consumers from situations like here, where the assets are held by a bank that is affiliated with the same firm providing the advisory services. 26 U.S.C. § 4975(e)(2)(B).

### D.  <u>Wells Fargo Breached Its Legal and/or Contractual Duties to Its Customers</u>

75. Wells Fargo breached its fiduciary and/or contractual duties by developing and creating a cash sweep program that elevated its interests over those of Plaintiffs and Class members, including by failing to negotiate, at arm's length, higher reasonable interest rates for its customers' deposits in operating the Wells Fargo Sweep Program.

76. Through its contractual and legal duties, Wells Fargo was obligated to act in the best interest of its customers consistent with the Brokerage and Retirement Custodial Agreements. Devising a cash sweep program that allows it to extract excessive fees from its customers' cash sweep deposits, through the negotiation of unreasonably low interest rates with program bank partners, was against its customers' interests.

77. Wells Fargo recommended the Wells Fargo Sweep Program as an investment strategy by automatically enrolling Wells Fargo customers into it and giving them no other options. Wells Fargo also did not negotiate higher reasonable rates of interest for customers' cash sweep

deposits, but instead worked in consultation with its affiliated bank partners to set artificially and unreasonably low interest rates.

78.　　The Department of Labor defined a "reasonable" rate of interest as follows:

A "reasonable" rate of interest means a rate of interest determinable by reference to short-term rates available to other clients of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as the sovereign short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated.[25]

79.　　Additionally, the Internal Revenue Service defines an "arm's length interest rate" as, "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[26]

80.　　When compared to competing products and using other rates as reference, the Wells Fargo Sweep Program's interest rates do not have the characteristics of a "reasonable" rate of interest negotiated at arm's length.

### 1.　**Wells Fargo's Rates are Substantially Lower than Its Competitors' Rates**

81.　　Wells Fargo Sweep Program's interest rates are substantially lower than similar sweep vehicles—interest-bearing, FDIC insured deposit accounts—offered by other brokerages. For example, the cash sweep interest rates paid by six of Wells Fargo's competitors are provided in the table below:

| Wells Fargo Competitor | Cash Sweep Interest Rate |
|---|---|
| **Janney**[27] | 1.8% |
| **MassMutual**[28] | 1.08% |
| **MooMoo**[29] | 4.6% |

[25] 68 Fed. Reg. 34646, at 34648 (June 10, 2003)
[26] 26 CFR § 1.482-2(a)(2).
[27] https://www.janney.com/docs/default-source/client-resources-disclosures/account-agreements-terms-of-service/cash-management/rates.pdf (last accessed September 27, 2024).
[28] https://www.massmutual.com/investment/cash-sweep-programs (last accessed September 17, 2024).
[29] https://www.moomoo.com/us/invest/cashsweep (last accessed September 27, 2024).

| Vanguard[30] | 4.15% |
|---|---|
| Webull[31] | 5.0% |
| William Blaire[32] | 2.25% |

82.    With respect to advisory customers in particular, Wells Fargo competitor JP Morgan pays advisory customers a substantially higher rate of 5.10%.[33]

83.    Wells Fargo's competitors have consistently offered higher interest rates over the years. Vanguard offered 2.25% in August of 2022[34], and increased rates to 3.9% by January of 2023.[35] During that same period Wells Fargo's rates went from a miniscule 0.02% to a miserable 0.12% for its lowest tier customers.

84.    Wells Fargo's competitors even use some of the same bank partners for their cash sweep programs as Wells Fargo, and these pay competitors' customers substantially higher rates.

85.    For example, the program banks that Vanguard uses for its sweep program are listed in its Program Bank List.[36] As of August 2024, Citibank, N.A. is one of the banks that participates in Vanguard's Bank Sweep Program. So, some of Vanguard's customers' uninvested cash is swept into interest-bearing deposit accounts with Citibank, N.A.

86.    Wells Fargo's list of priority banks for its cash sweep program also lists Citibank N.A. as a bank that participates in the Wells Fargo Sweep Program.[37]

87.    Even though they use some of the same banks, Vanguard pays rates that are roughly two hundred times higher than Wells Fargo. Thus, Wells Fargo could have negotiated and obtained

---

[30] https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed September 27, 2024).

[31] https://www.webull.com/cash-management (last accessed September 27, 2024).

[32] https://www.williamblair.com/Private-Wealth-Management/Bank-Deposit-Sweep-Program/Interest-Rate-Tiers (last accessed September 27, 2024).

[33] https://www.chase.com/personal/investments/sweep-options-yields (last accessed September 27, 2024).

[34] https://web.archive.org/web/20220804190832/https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed September 27, 2024).

[35] https://web.archive.org/web/20230116083059/https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed September 27, 2024).

[36] https://personal1.vanguard.com/pdf/Bank_Sweep_Participating_Banks.pdf (last accessed September 27, 2024).

[37] https://saf.wellsfargoadvisors.com/emx/dctm/Marketing/Marketing_Materials/Cash_Management/Program_Banks.pdf (last accessed September 27, 2024).

higher rates for its customers, as competitors like Vanguard do, but instead negotiated and obtained larger spreads for itself in breach of the legal and contractual duties owed to customers.

88.     The same is true for MassMutual, whose bank list also includes some of the same banks as Wells Fargo, including Citibank N.A. and State Street Bank and Trust Co, but pays over 50 times higher.[38] Not only are Wells Fargo's interest rates significantly lower than its competitors, but they are also substantially lower than interest rates for money market fund rates.

### 2.     Money Market Funds

89.     Many of Wells Fargo's competitors offer programs that sweep uninvested cash into money market funds where their customers receive substantially higher returns on their cash.

90.     For example, Wells Fargo competitor Fidelity offers a program that sweeps uninvested cash into money market funds that earn approximately 5%.[39] Vanguard's sweep program also offers money market funds as an option, with yield rates also around 5%.[40] But Wells Fargo chooses not to offer a money market fund as a cash sweep option for retail customers and instead automatically places customers into the cash sweep programs it has developed with low yield rates that it negotiated with its affiliated banks.

### E.     Plaintiffs' Experiences

91.     Plaintiff Varady has a self-managed brokerage account with Wells Fargo Advisors and has been a customer of Wells Fargo since 2011. Wells Fargo automatically enrolled Plaintiff Varady in the Wells Fargo Sweep Program, and so his uninvested cash is automatically swept into the banks that Wells Fargo selects in its discretion at the low and unreasonable interest rates alleged herein.

92.     Plaintiff Gruber had a traditional IRA retirement account managed by Wells Fargo from August 2022 until November 2023. Wells Fargo automatically enrolled Plaintiff Gruber in the Wells Fargo Sweep Program, and so his uninvested cash was automatically swept into the

---

[38] https://compass.massmutual.com/api/public/assets/file/bltb7a2b1287ecb5a26 (last accessed September 27, 2024).
[39] https://www.fidelity.com/go/manage-cash-rising-costs (last accessed Sep. 27, 2024).
[40] https://investor.vanguard.com/investment-products/money-markets (last accessed Sept. 27, 2024).

banks that Wells Fargo selected in its discretion at the low and unreasonable interest rates alleged herein.

93.    Plaintiff Schreiman had both a Roth IRA account managed by Wells Fargo and a self-managed IRA retirement account for approximately 10 to 15 years until she closed both accounts in December 2023. Wells Fargo automatically enrolled Plaintiff Schreiman in the Wells Fargo Sweep Program, and so her uninvested cash was automatically swept into the banks that Wells Fargo selected in its discretion at the low and unreasonable interest rates alleged herein.

## VI.    CLASS ACTION ALLEGATIONS

94.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated (the "Nationwide Class") pursuant to the Federal Rule of Civil Procedure 23(b)(2), (b)(3), and (c)(4) initially defined as follows:

> All persons in the United States who had cash deposits or balances in the Wells Fargo Sweep Program from 2018 to the present.

95.    The Nationwide Class is referred to herein as "Class."

96.    Excluded from the proposed Class are Defendants, any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants; and judicial officers to whom this case is assigned and their immediate family members.

97.    Plaintiffs reserve the right to re-define the Class definition after conducting discovery.

98.    **Numerosity (Fed. R. Civ. P. 23(a)(1))**. The Class members are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs currently. However, Wells Fargo "provides investment advice and guidance to clients through nearly 12,000 Financial Advisors and referrals from more than 4,000 Licensed Bankers in retail branches across the U.S. Wells Fargo Advisors administers $1.9

trillion in client assets as of June 30, 2021."[41] The parties will be able to identify Class members and the exact size of the Class through discovery and Defendants' records.

99. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist for each of the claims and predominate over questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

    a. Whether Defendants owed fiduciary duties to Plaintiffs and Class members in the operation of the Wells Fargo Sweep Program;

    b. Whether Defendants breached its fiduciary duties to Plaintiffs and Class members in the operation of the Wells Fargo Sweep Program;

    c. Whether Defendants breached the contract with Plaintiffs and Class members in the operation of the Wells Fargo Sweep Program;

    d. Whether Defendants' interest rates paid to Plaintiffs and Class members were unreasonable;

    e. Whether Defendants breached the implied covenant of good faith and fair dealing;

    f. Whether Defendants are liable for gross negligence to Plaintiffs and Class members in the operation of the Wells Fargo Sweep Program;

    g. Whether Defendants have been unjustly enriched because of the conduct complained of herein; and

    h. Whether Plaintiffs and Class members are entitled to relief, including damages and equitable relief.

100. **Typicality (Fed. R. Civ. P. 23(a)(3))**. Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs, like all Class members, were paid unreasonable interest rates in connection with the Wells Fargo Sweep Program. Accordingly, Plaintiffs' claims are typical of other Class member's claims because they arise from the same course of conduct by Defendants, and the relief sought is common to Class members.

[41] https://fa.wellsfargoadvisors.com/zhs-wealth-management-group/fargoradvisors.htm(last accessed August 6, 2024).

101. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**. Pursuant to Rule 23(a)(4), Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiffs have retained counsel experienced in prosecuting class actions and breach of fiduciary cases.

102. **Superiority (Fed. R. Civ. P. 23(b)(3))**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

103. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2))**. In the alternative, this action may properly be maintained as a class action, because:

    a. the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants; or

    b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

    c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

104. **Issue Certification (Fed. R. Civ. P. 23(c)(4))**. In the alternative, the common questions of fact and law, set forth in Paragraph 99, are appropriate for issue certification on behalf of the proposed Class.

## VII. CAUSES OF ACTION

### COUNT ONE
### BREACH OF FIDUCIARY DUTY

105. Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

106. Defendants owed fiduciary duties to Plaintiffs and Class members as retail customers with advisory and/or self-managed accounts. Defendants' fiduciary duties arose out of Defendants' roles as investment advisors for managed accounts, from the recommendations they made to Plaintiffs and Class members via automatic enrollment of Plaintiffs and Class members in the Wells Fargo Sweep Program pursuant to Regulation Best Interest, and from its contractual obligations to serve as Plaintiff and Class members' agents under the Brokerage Agreement, including Defendants' holding and control over uninvested cash that belonged to its clients, such as Plaintiffs and Class members.

107. Defendants' duties to Plaintiffs and Class members, include, but are not limited to: (a) a duty of care to act in their best interests; (b) a duty to not place Defendants' interests above Plaintiffs' and Class members; (c) a duty to use reasonable diligence, care, and skill when making recommendations; (d) a duty to avoid conflicts of interest; (e) a duty to disclose conflicts of interests; and (f) a duty to secure reasonable rates of interest on uninvested cash.

108. Defendants breached their duties to Plaintiffs and Class members by, among other things: (a) failing to act in their best interests, which was to negotiate and pay a higher and reasonable interest rate on Plaintiffs and Class members' cash balances; (b) placing their own interests ahead of Plaintiffs and Class members' interests by securing increased net interest income for themselves at the expense of Plaintiffs and Class members; (c) failing to use reasonable diligence, care, and skill when operating the Wells Fargo Sweep Program; (d) failing to avoid or mitigate conflicts of interests; and (e) failing to disclose Defendants' conflict of interest.

109. As a direct and proximate result of Defendants' misconduct as alleged herein, Plaintiffs and Class members suffered damages in that they did not earn higher and reasonable rates of interests, in amounts be determined at trial. Plaintiffs seek disgorgement of any undue and unjust gains of Defendants, punitive damages, as well as all other equitable relief deemed just and proper.

110. Defendants' conduct also warrants a punitive damage award because Defendants are guilty of oppression and engaged in conduct that is outrageous and exhibited reckless indifference to the rights of its clients, including Plaintiffs and Class members.

**COUNT TWO**
**GROSS NEGLIGENCE**

111. Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

112. Defendants owed Plaintiffs and Class members the duty to exercise reasonable diligence, care, and skill in recommending the Wells Fargo Sweep Program.

113. Defendants breached their duties by failing to act in the best interests of Plaintiffs and Class members, including by not negotiating, at arm's length, and paying the available reasonable interest rates on the cash balances in their clients' accounts; and by placing their own interests ahead of Plaintiffs' and Class members' interests by securing increased net interest income at the expense of their clients.

114. Defendants' conduct as alleged in this Complaint was grossly negligent because their self-serving conduct demonstrates a complete lack of care and reckless disregard for their clients' interests. Defendants' conduct also demonstrates an extreme departure from the ordinary standard of care.

115. Defendants' gross negligence directly and proximately caused harm to Plaintiffs and the Class members. As a result, Plaintiffs and Class members suffered damages in an amount to be determined at trial.

**COUNT THREE**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

116.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

117.    The Broker Agreement, entered into by Defendants on the one hand and Plaintiffs and Class members on the other, provides that New York law applies to services offered by Defendants, including the Wells Fargo Sweep Program.

118.    Under New York common law, a covenant of good faith and fair dealing is implied into every contract.

119.    Plaintiffs and Class members contracted with Defendants to provide them with financial and/or investment services, pursuant to the Brokerage Agreement. Under the Brokerage Agreement, Defendants were agents of Plaintiffs and Class members and owed them fiduciary duties, including to act in their best interests. Defendants failed to obtain for Plaintiffs and Class members reasonable rates of return on their cash balances and instead acted in Defendants' own interests. Moreover, under the Brokerage Agreement, and pursuant to Reg. BI, 84 Fed. Reg. 134, and 17 C.F.R. § 276, Defendants had a duty to act in the best interests of Plaintiffs and Class members and not put their interests above Plaintiffs and Class members.

120.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties (both explicit and implied) and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendants would act fairly and in good faith in carrying out their contractual obligations to provide Plaintiffs and Class members with fair and reasonable rates of return on their cash sweep balances.

121.    Defendants breached these implied covenants of good faith and fair dealing by failing to provide Plaintiffs and Class member with fair and reasonable rates of return on their cash sweep balances. Defendants, instead of providing fair and reasonable rates of return on their clients' cash sweep balances, Defendants provided far below reasonable rates of return than their

clients could have otherwise earned on their cash. Defendants acted dishonestly and failed to exercise and/or abused their discretion unreasonably in selecting the banks which would hold Plaintiffs' and Class members' cash balances and in failing to negotiate reasonable rates of interest but instead negotiated higher rates of interest and fees for themselves.

122. Plaintiffs and Class members fulfilled all the terms and obligations of their contract, including paying for Defendants' services.

123. Defendants' failure to act in good faith in providing fair and reasonable rates of return on their customers' cash sweep balances denied Plaintiffs and Class members the full benefit of their bargain. Plaintiffs and Class members received a minimal return on their cash sweep balances that were less than what they could have otherwise earned and less than their reasonable expectations under their contract with Defendants.

124. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members sustained damages in an amount to be determined by this Court, including interest on all liquidated sums.

## COUNT FOUR
## BREACH OF CONTRACT

125. Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

126. Plaintiffs and Class members entered into the Brokerage Agreement and/or the Retirement Custodial Agreement, whereby Defendants are obligated to provide Plaintiffs and Class members with financial services, including a contractual obligation to negotiate for Plaintiffs and Class members rates of return on their cash balances that are reasonable and to otherwise act in the best interest of the clients in the operation of the Wells Fargo Sweep Program.

127. Plaintiffs and Class members, at all times, performed their obligations under the Brokerage Agreement and the Retirement Custodial Agreement.

128. Pursuant to the Brokerage Agreement, Defendants were obligated, and continue to be obligated, to obtain reasonable rates of return on customers' cash sweep balances and to

otherwise act in the best interests of their customers in the operation of the Wells Fargo Sweep Program.

129.    As alleged herein, the rates of return paid to Plaintiffs and Class members on their cash sweep balances were unreasonable, and the increased net interest income and fees that Defendants extracted for themselves when negotiating with the affiliated banks were also unreasonable. As a result, Defendants breached the contract with Plaintiffs and Class members.

130.    Plaintiffs and Class members were harmed by Defendants' breach in that they did not receive reasonable interest rates on their cash balances, and they sustained damages in an amount to be determined at trial.

**COUNT FIVE**
**UNJUST ENRICHMENT**

131.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

132.    Because of Defendants' wrongful conduct as alleged herein, Plaintiffs and Class members received lower interest payments on their cash sweep balances than they would have in a reasonable and fair market.

133.    Because of Defendants' wrongful conduct as alleged herein, Defendants unjustly received a benefit at the expense of Plaintiffs and Class members in the form of increased net interest income that belonged to Plaintiffs and Class members.

134.    Defendants wrongfully retained the benefits conferred on it by Plaintiffs and Class members.

135.    It would be unjust and inequitable to allow Defendants to retain these wrongfully obtained benefits.

136.    Plaintiffs and Class members are entitled to restitution and disgorgement of the benefits unjustly obtained, plus interest, in an amount to be proven at trial.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class defined above, respectfully request that this Court enter:

(a) An order certifying this case as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiffs as the Class representatives, and appointing the undersigned as Class counsel;

(b) A judgment awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, equitable relief, restitution, and disgorgement;

(c) An order entering injunctive and declaratory relief as appropriate under the applicable law;

(d) An order awarding Plaintiffs and the Class pre-judgment and/or post-judgment interest as prescribed by law;

(e) An order awarding reasonable attorneys' fees and costs as permitted by law; and

(f) All other and further relief as may be just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: September 26, 2024

**GIBBS LAW GROUP LLP**

*/s/ Rosemary M. Rivas*
Rosemary M. Rivas
Eric Gibbs
David Stein
Rosanne L. Mah
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
rmr@classlawgroup.com
ehg@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

Brian E. Johnson
211 N. Union St., Suite 100
Alexandria, VA 22314
Phone: (510) 350-9705 (Direct)
Fax: (510) 350-9701

bej@classlawgroup.com

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT