Bryan A. Merryman (SBN 134357)
bmerryman@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213) 620-7802
Facsimile: (213) 452-2329

David G. Hille (*pro hac vice*)
dhille@whitecase.com
Gregory M. Starner (*pro hac vice*)
gstarner@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Defendants*
*Wells Fargo & Company,*
*Wells Fargo Advisors Financial Network, LLC, and*
*Wells Fargo Clearing Services, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Wells Fargo Cash Sweep Litigation* | Case No.  3:24-cv-04616-VC |
| | **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:  June 5, 2025<br>Time:  10:00 a.m.<br>Courtroom:  4, 17th Floor<br>Judge:  Hon. Vince Chhabria |

**NOTICE OF MOTION AND MOTION TO DISMISS**

NOTICE IS HEREBY GIVEN that on June 5, 2025, at 10:00 AM PT, defendants, Wells Fargo & Company ("WFC"), Wells Fargo Advisors Financial Network, LLC ("FiNet"), and Wells Fargo Clearing Services, LLC ("Wells Fargo Advisors" or "WFA," collectively with WFC and FiNet, "Defendants") will appear before Judge Vince Chhabria and will, and hereby do, move to dismiss Plaintiffs Edward Nadolny, Darren Cobb, and Keith Bujold's ("Plaintiffs") Consolidated Class Action Complaint (ECF No. 125, the "Consolidated Complaint" or "CC"), and each claim alleged therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants bring this motion on the following grounds: (1) Plaintiffs' claims arising before July 25, 2021, are time-barred under California's statute of limitations for breach of contract (including the implied covenant of good faith and fair dealing), breach of fiduciary duty, and unjust enrichment claims; (2) Plaintiffs fail to plausibly allege that Defendants breached their account agreements (the "Agreements") in relation to WFA's cash sweep program particularly in light of WFA's fulsome disclosures regarding the cash sweep program, and do not plausibly allege that the rates paid on WFA's cash sweep program were unreasonable; (3) Plaintiffs' implied covenant of good faith and fair dealing claim fails as it duplicates Plaintiffs' deficient contract claim and would imply an obligation inconsistent with the Agreements' plain terms; (4) even if WFA had any contractual duty to pay a higher interest rate, Plaintiffs have waived their ability to enforce any purported duty by consistently accepting the interest paid on their uninvested cash; (5) in light of the Agreements, Plaintiffs cannot claim any breach of fiduciary duty by WFA in carrying out and complying with those Agreements; (6) Plaintiffs fail to plausibly allege a claim of unjust enrichment, which also recycles Plaintiffs' deficient contract claims; and (7) Plaintiffs fail to plead any facts in support of a claim against WFC or FiNet.

This motion is based on this notice of motion, the memorandum of points and authorities, the request for judicial notice, the pleadings and documents on file, and argument and other matters as may be presented to the Court at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Are Plaintiffs' claims arising before July 25, 2021, time-barred under California's statute of limitations for breach of contract (including the implied covenant of good faith and fair dealing), breach of fiduciary duty, and unjust enrichment claims?

2. Do Plaintiffs state a breach of contract claim premised on an alleged requirement to pay a higher interest rate with respect to WFA's cash sweep program, where the relevant agreements between Plaintiffs and WFA provide, *inter alia*, that the cash sweep program is optional, the interest paid on Plaintiffs' uninvested cash would vary and likely be lower than alternatives, if Plaintiffs wanted to improve their return on uninvested cash they should talk to a WFA investment professional to discuss other options, and that WFA has a conflict of interest because it receives fees and a spread as part of the cash sweep program; and where Plaintiffs fail to allege what constitutes a "reasonable" rate for WFA, referring only to false comparators?

3. Do Plaintiffs state a claim for breach of the implied covenant of good faith and fair dealing where their allegations are duplicative of their contract claims and are inconsistent with express terms of the parties' contract?

4. Have Plaintiffs waived any purported right to receive a higher interest rate (which the Agreements do not provide for) after having consistently accepted the interest paid on their uninvested cash throughout the proposed class period?

5. Do Plaintiffs state a breach of fiduciary duty claim where their agreements with WFA disclose and expressly authorize the challenged conduct and where no private right of

action arises under Regulation Best Interest or under Section 206 of the Investment Advisers Act of 1940?

6. Do Plaintiffs state an unjust enrichment claim where their allegations duplicate their deficient breach of contract claims and identify no "extraordinary circumstances"?

7. Do Plaintiffs state a claim against WFC and FiNet where there are no allegations of wrongdoing against either of them?

Dated:   April 24, 2025                        WHITE & CASE LLP


                                              By:   */s/ David G. Hille*
                                                   David G. Hille

                                              Attorneys for Defendants
                                              Wells Fargo & Company,
                                              Wells Fargo Advisors Financial Network, LLC,
                                              and Wells Fargo Clearing Services, LLC

**TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    FACTUAL BACKGROUND ........................................................................................... 2

    A.    Parties ................................................................................................................... 2

    B.    WFA's Cash Sweep Program ............................................................................... 4

III.    PLAINTIFFS' CONSOLIDATED COMPLAINT SHOULD BE DISMISSED .............. 7

    A.    Plaintiffs' Claims Arising Four Years or More Before the Complaint are Time-Barred ................................................................................................................... 7

    B.    The Breach of Contract Claim Fails ................................................................... 8

        1.    WFA Is Not Obligated to Obtain any Particular Rate on CSP Accounts .. 9

            a.    The Reg BI Disclosure Is Not a Contractual Commitment ......... 10

            b.    The IRA Disclosures Disclaim Any Obligation to Obtain Higher Rates ............................................................................................ 12

        2.    WFA's Policies and Procedures Did Not Promise any Particular Rate on CSP Accounts ...................................................................................... 13

        3.    Plaintiffs' Allegations that WFA Violated the Agreements Fail ............. 13

    C.    Plaintiffs' Implied Covenant Claim Fails ......................................................... 17

    D.    Plaintiffs Have Waived Any Alleged Contractual Rights to Claim a Higher Rate of Interest ................................................................................................... 18

    E.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty ........................... 19

            a.    Reg BI Does Not Support Plaintiffs' Breach of Fiduciary Claim with Respect to the Cash Sweep Program ................................... 21

            b.    The IAA and The SEC Order Do Not Give Rise to A Fiduciary Duty Claim on Advisory Clients' Cash Sweep Interest Rates ..... 23

    F.    Plaintiffs' Unjust Enrichment Claim Fails ........................................................ 24

    G.    Plaintiffs Fail to State a Claim Against WFC and FiNet ................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aiello v. Burns Int'l Sec. Servs Corp.*,
973 N.Y.S.2d 88 (2d Dep't 2013)......................................................................................10

*Allen v. Fid. Brokerage Servs. LLC*,
711 F. Supp. 3d 219 (S.D.N.Y. 2024)...........................................................................11, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................7

*Assurance Indus. Co. v. Snag, Inc.*,
No. C 10-1718 SBA, 2010 U.S. Dist. LEXIS 109585 (N.D. Cal. Oct. 14, 2010) .....................8

*Atwal v. Nortonlifelock, Inc.*,
No. 20-cv-00449, 2022 U.S. Dist. LEXIS 19974 (W.D.N.Y. 2022) ........................................25

*Bai Wen v. N.Y.C. Reg'l Ctr., LLC*,
695 F. Supp. 3d 517 (S.D.N.Y. 2023)................................................................................20

*Baltia Air Lines, Inc. v. CIBC Oppenheimer Corp.*,
709 N.Y.S.2d 54 (1st Dep't 2000) .............................................................................9, 12, 13

*Bank Leumi USA v. Ehrlich*,
98 F. Supp. 3d 637 (S.D.N.Y. 2015)..................................................................................24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................7

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
448 F.3d 573 (2d Cir. 2006)...............................................................................................24

*Bodea v. JPMorgan*,
No. 24-cv-6404, ECF No. 69  (S.D.N.Y. Mar. 28, 2025).....................................................15

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)..........................................................................................11, 13

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*,
602 F. Supp. 3d 663 (S.D.N.Y. 2022)................................................................................19

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010).................................................................................25

*Crigger v. Fahnestock & Co.,*
No. 01-cv-07819 (JFK), 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003).................................21

*Cunningham v. USI Ins. Servs., LLC*,
No. 21-cv-1819, 2023 WL 8603123 (S.D.N.Y. Dec. 12, 2023)..............................................14

*DeBlasio v. Merrill Lynch & Co., Inc.*,
No. 07-cv-318 (RJS), 2009 WL 2242605
(S.D.N.Y. Jul. 27, 2009) ......................................................9, 11, 13, 15, 18, 22, 24, 25

*Europacific Asset Mgmt. Corp. v. Tradescape Corp.*,
No. 03-cv-4556, 2005 WL 497787 (S.D.N.Y. Mar. 2, 2005)...................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
858 F. Supp. 2d 290 (S.D.N.Y. 2022)....................................................................................17

*Focus 15, LLC v. Nico Corp.*,
No. 21-cv-1493, 2022 WL 267441 (N.D. Cal. Jan. 28, 2022)...................................................8

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ...............................................................................................................8

*Gasery v. Kalakuta Sunrise, LLC*,
422 F. Supp. 3d 807 (S.D.N.Y. 2019).....................................................................................21

*Goldsmith v. UBS Financial Services*,
Docket No. 1:24-cv-06354 (S.D.N.Y. Aug 22, 2024)............................................................15

*Grochowski v. Phoenix Const.,*
318 F.3d 80 (2d Cir. 2003).......................................................................................................13

*Hauptman v. Interactive Brokers, LLC*,
No. 12-cv-09382 (GBD), 2018 WL 4278345 (S.D.N.Y. June 12, 2018)....................12, 13, 17

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132 (2009) ..............................................................................................................24

*In re Blech Sec. Litig.*,
No. 94-cv-7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003)..............................................17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) ...............................................................................................17

*In re Sterba*,
852 F.3d 1175 (9th Cir. 2017) ...................................................................................................7

*Kamco Supply Corp. v. On the Right Track, LLC*,
49 N.Y.S.3d 721 (2d Dep't 2017).............................................................................................18

iii

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. Aug. 29, 2012) ...................................................................17

*Lapa v. JP Morgan Chase Bank, N.A.*,
   No. 21-cv-4737, 2023 WL 4706827 (S.D.N.Y. July 22, 2023).................................................8

*Le Bouteiller v. Bank of New York Mellon*,
   No. 14-cv-6013, 2015 WL 5334269 (S.D.N.Y. Sep. 11, 2015) ..............................................12

*Lee v. Batal*,
   No. 22-cv-02988, 2022 WL 18231686 (C.D. Cal. Dec. 2, 2022).............................................7

*Levitin v. Painewebber, Inc*,
   159 F.3d 698 (2d Cir. 1998)......................................................................................16, 18, 25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   No. 12-cv-3723, 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013), *rev'd in part on other
   grounds*, 797 F.3d 160 (2d Cir. 2015) ...................................................................................16

*Martin Delicatessen v. Schumacher*,
   52 N.Y.2d 105 (1981) ............................................................................................................10

*Martinez v. Agway Energy Servs., LLC*,
   88 F.4th 401 (2d Cir. 2023) ...................................................................................................10

*McCracken v. Verisma Sys., Inc*.,
   91 F.4th 600 (2d Cir. 2024) ...................................................................................................25

*McCrary v. Merrill Lynch*,
   No. 23-cv-10768 (S.D.N.Y. Dec. 11, 2023) ...........................................................................15

*Mehlman v. Ameriprise*,
   No. 0:24-cv-3018 (D. Minn. Nov. 4, 2024).............................................................................15

*Molnar v. Greentech Capital Advisors, L.P.*,
   No. 650242/2020, 2022 N.Y. Misc. LEXIS 37071 (Sup. Ct. Mar. 3, 2022) ............................7

*Morton v. Aizenberg*,
   No. 21-cv-7782, 2024 WL 1892435 (S.D.N.Y. Apr. 29, 2024) ..............................................23

*O'Connor v. Henkel Corp.*,
   No. 14-cv-5547, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) .......................................12, 13

*Oceana Holding Corp. v. A. Oceana Co. Ins.*,
   4 Misc. 3d 1029(A), (Civ. Ct. Kings Cnty. Sept. 30, 2004) ...................................................19

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*,
   No. 98-cv-6907, 2000 U.S. Dist. LEXIS 3941 (S.D.N.Y. Mar. 29, 2000).............................20

*Peters v. LPL Financial*,
    Docket No 3:24-cv-01228, (S.D. Cal. Dec. 12, 2024)...........................................................15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................................................15

*Rozsa v. May Davis Group, Inc.*,
    187 F. Supp. 2d 123 (S.D.N.Y. 2002)..................................................................................23

*Sherlip Estate v. Morgan Stanley*,
    No. 24-cv-4571, ECF No. 40 ................................................................................................15

*Singh v. City of New York*,
    40 N.Y.3d 138 (2023) ...........................................................................................................17

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) ..................................................................................................14

*Snyder v. Wells Fargo Bank, N.A.*,
    594 F. App'x 710 (2d Cir. 2014) ..........................................................................................20

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998) ................................................................................................8

*Spencer-Smith v. Ehrlich*,
    No. 23-cv-2652, 2024 WL 709291 (S.D.N.Y. Feb. 21, 2024) ..............................................20

*Spinal Techs., LLC v. Mazor Robotics Inc.*,
    624 F. Supp. 3d 330 (W.D.N.Y. 2022)................................................................................24

*Tellabs, Inc. v. Makor Issues & Rts.*,
    551 U.S. 308 (2007)...........................................................................................................2, 15

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979)................................................................................................................23

*Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*,
    43 F. Supp. 3d 236 (S.D.N.Y. 2014)....................................................................................19

*United States v. Bestfoods*,
    524 U.S. 51 (1998)................................................................................................................25

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020)............................................................................11, 23

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    No. 19-cv-7998, 2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) ..............................................14

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    No. 19-cv-7998, 2023 WL4239073 (S.D.N.Y. June 28, 2023) ...............................................13

*Vallin v. PNC*,
    No. 2:24-cv-01295 (W.D. Pa. Dec. 13, 2024) .........................................................................15

*Wakefield v. Wells Fargo & Co.*,
    No. 13-cv-5053, 2014 WL 5077134 (N.D. Cal. Oct. 9, 2014) ...................................................7

*XY Planning Network, LLC v. U.S. SEC*,
    963 F.3d 244 (2d Cir. 2020)...................................................................................................22

**STATUTES**

15 U.S.C. § 78a.......................................................................................................................10

15 U.S.C. § 80b-6 ...................................................................................................................16

26 U.S.C. § 4975(d)(4) ...........................................................................................................12

**RULES**

17 C.F.R. § 240.151-l(a) ....................................................................................................10, 21

217 C.F.R. § 275.206(4)-7 .......................................................................................................16

26 CFR § 54.4975-6(b)(1) .......................................................................................................12

CCP § 337 ................................................................................................................................8

CCP § 343 ................................................................................................................................8

Fed. R. Evid. 408 ...................................................................................................................17

**MISCELLANEOUS**

84 Fed. Reg. 33318 .................................................................................................................11

84 Fed. Reg. at 33327 .............................................................................................................22

84 Fed. Reg. at 33333 .............................................................................................................21

84 Fed. Reg. 33669, 33671 ................................................................................................20, 23

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

WFA, like virtually every other industry participant, offers a cash sweep program in which clients' uninvested cash—which otherwise would earn *no* interest while remaining idle in their investment accounts—is deposited in interest bearing FDIC-insured bank deposit accounts.  Does WFA earn a return on the swept cash?  Yes, as is fully disclosed and agreed with clients, and just like every financial institution that holds cash for its clients.  In addition, WFA's cash sweep program ("CSP") is and always has been completely optional for clients.  All of WFA's clients are able to invest in products outside the CSP if they wish to seek higher yields (with more risk).

The account agreements between WFA and its clients (the "Agreements") define the basis for and scope of WFA's obligations and duties to Plaintiffs in respect of the CSP and leave no room for Plaintiffs' claims.  The Agreements never promise a particular rate that will or must be paid in the CSP and instead provide that rates will vary, that the rates may well be lower than rates available outside WFA's CSP, and that current rates would always be publicly available online or from an advisor.  Plaintiffs also acknowledged in the Agreements they could invest their cash elsewhere if they wished to maximize returns on their cash.  Plaintiffs also expressly agreed that WFA had no duty to advise them in connection with the CSP, and nowhere in the Agreements does WFA recommend or advise that Plaintiffs participate in the CSP.

The Agreements also disclose fully that WFA has conflicts of interest with respect to the CSP.  WFA disclosed its financial incentives to offer the CSP, including how WFA and its affiliates profit from the CSP and how WFA may choose CSP vehicles and rates based on these financial interests.  Plaintiffs agreed to these conflicts and opted to open accounts at WFA and to remain in the CSP nonetheless.  Indeed, Plaintiffs make no allegation that they, at any time during the seven-year proposed class period, ever complained or raised issue regarding the CSP interest

1

rates, despite knowing what the rates were and how much interest they were earning.  There is also no plausible allegation that WFA's CSP rates were not reasonable.  To the contrary, WFA's rates are exactly in line with its competitors' rates as complaints filed around the country against other defendants make clear.

In light of the Agreements' terms, Plaintiffs cannot plausibly state a claim for breach of contract or the covenant of good faith and fair dealing.  Nor can they repackage their deficient contract claims as fiduciary duty or unjust enrichment claims.  The relationship between WFA and Plaintiffs as relates to the CSP is defined fully by the Agreements and there is simply no place for those other claims.  All of Plaintiffs' claims should be dismissed.

## II.   FACTUAL BACKGROUND

### A.   Parties

WFA is a Delaware limited liability company registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and investment adviser.  CC ¶ 19.  WFA offers a range of brokerage and investment products, services, and account types, including brokerage accounts (*i.e.*, where clients make their own investment decisions), advisory accounts, some of which are discretionary (*i.e.*, where the accounts are managed by WFA, an affiliate, or a third party) and others which are non-discretionary (*i.e.*, where investment advice may be given but clients make the ultimate decisions), and retirement accounts.  *See* Request for Judicial Notice ("RJN"), Ex. 1.[1]

---

[1] *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007) (on a motion to dismiss courts may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice).

2

Plaintiffs also assert claims against WFA's parent, WFC, which is a separate holding company, and against WFA's affiliate, FiNet.  CC ¶¶ 18, 20.  Neither WFC nor FiNet is alleged to have had any dealings with Plaintiffs.[2]

Plaintiffs allege that they held investment accounts with WFA and that their uninvested cash was swept into interest-bearing bank accounts through the CSP.  CC ¶¶ 15–17.  To open investment accounts with WFA, Plaintiffs executed a General Account Agreement Document, which expressly incorporates a Cash Sweep Program Disclosure Document ("CSP Disclosure") and an Account Disclosures Document ("Account Disclosures").  RJN Ex. 2 § I.1 ("By signing the Signature Page(s), you agree to this Agreement and any additional terms, agreements or Account Disclosures we may provide you, which are incorporated into this Agreement by reference."); *id.* § I.8; CC ¶¶ 41–42, 45–47.  As Plaintiffs acknowledge, the Agreements also incorporate "each successive iteration" of the disclosure documents "during the periods of time in which they were operative."  CC ¶ 48.  Other disclosures and informational documents may be provided to clients, including a Regulation Best Interest ("Reg BI") Disclosure, Form CRS Relationship Summary, and certain Wrap Fee brochures.  CC ¶¶ 43, 46.

In 2011, Plaintiff Bujold executed an agreement with WFA to open a non-managed brokerage account and a non-managed traditional Individual Retirement Account ("IRA").  CC ¶¶ 15, 45–47.  Plaintiff Nadolny executed an agreement with WFA in 2021 to open a "retirement account that was managed on an advisory basis," which he "subsequently closed."  CC ¶¶ 16, 41–44.  Plaintiff Cobb holds a traditional IRA "that was managed by Wells Fargo Advisors," which

---

[2] Although Plaintiffs claim to have held accounts with "Wells Fargo Advisors"—defined as WFA and FiNet collectively (CC ¶ 21)—the documents cited in the Complaint show that Plaintiffs' accounts were held with WFA and not with FiNet.

he opened in September of 2007.  CC ¶ 17; RJN Ex. 3.  Plaintiffs do not allege that they requested or received advice from WFA to place or maintain their uninvested cash in the CSP.

### B.    WFA's Cash Sweep Program

As is standard in the industry, WFA offers a CSP to its clients.  WFA's program allows clients to have their temporarily uninvested cash (*e.g.*, cash held in the account just before making a purchase, or cash received upon liquidating a position) held in an FDIC-insured account generating interest, rather than sit idle in their investment account without FDIC insurance and generating no return.[3]  RJN Ex. 2 § I.8.  Participation in WFA's "Cash Sweep Program is optional and [clients] may, at any time, elect to not participate."  RJN Ex. 4 at 4.  Thus, there was no requirement that Plaintiffs participate or remain in the CSP.  Nor was there any requirement that WFA offer *any* interest bearing or FDIC-insured cash holding option.

**Interest Rates.**  The Parties never agreed that WFA must pay any particular interest rate on funds in the CSP.  No rates or benchmarks are mentioned anywhere in the Agreements.  Instead, the Agreements provide that CSP rates "will vary over time," "may be lower than prevailing market interest rates," and "may be lower than rates available to clients making deposits directly with the Program Banks or at other banks, or available by investing directly in other money market mutual funds."  RJN Ex. 4 at 5.  The CSP Disclosure further informed Plaintiffs that "[n]either Wells Fargo Advisors nor any of the Program Banks are under any obligation to provide the highest rates available in the marketplace," and that "[h]igher rates may be available outside of the Cash Sweep Program."  *Id.*; *see also id.* ("[D]irect investment options may generate a higher rate of

---

[3] WFA's "primary Cash Sweep Option" is the "Expanded Bank Deposit Sweep," which consists of both affiliated and unaffiliated banks.  Including the unaffiliated banks in the Expanded Bank Deposit Sweep maximizes the FDIC insurance available to clients, for coverage up to $1.25 million when spread across multiple institutions.  RJN Ex.4 at 4.  This far exceeds the $250,000 SIPC insurance that would apply to clients' cash if left in their investment accounts.

interest or yield than the Cash Sweep Program."). The Agreements also clearly state, and Plaintiffs acknowledged, that if they wanted to "seek the highest yields currently available in the market," they should "contact [their] investment professional . . . to discuss investment options that may be available outside of the Cash Sweep Program." *Id.* at 5.[4] The Agreements also provide that current rates are always publicly available online at https://www.wellsfargoadvisors.com/cashsweep, from a WFA investment professional, or by contacting WFA. *Id.* at 5. Thus, Plaintiffs were fully informed at the time they entered into the Agreements as to what current CSP rates were and that they would vary. These disclosures alone render implausible Plaintiffs' claims that they were promised rates at any particular level.

**Fees Paid to WFA and WFA's Conflict of Interest.** WFA expressly disclosed in the Agreements that "[WFA] has a financial interest in the Cash Sweep Program" through its receipt of "fees and other financial benefits," and accordingly WFA has "a financial incentive to offer the particular sweep options included in our Cash Sweep Program." RJN Ex. 4 at 2. WFA explains how "[WFA] and its affiliates benefit financially through the 'spread' Affiliated Banks earn on deposits, payments [WFA] receives from Affiliated Banks and Unaffiliated Banks, and incentive compensation management personnel and other employees of [WFA] and its affiliates receive, which are based on several factors including [CSP] Program assets." *Id.* at 6. The CSP Disclosure also explains that WFA "receives payments from both Unaffiliated and Affiliated Banks, which are calculated as a percentage of the client assets deposited in the [CSP]," and the "interest rates paid to client accounts . . . are deducted from these payments, and Wells Fargo Advisors retains the remainder," as well as the fact that "the fee Wells Fargo Advisors receives from the Program

---

[4] Plaintiffs Bujold and Cobb, who are alleged to have opened their accounts in 2011 and 2007, also were notified that "[WFA] and the Program Banks may seek to pay as low a rate as possible consistent with [WFA's] views of competitive necessities." RJN Ex. 5 at 5.

Banks usually exceeds the interest paid to participating client accounts by a *substantial amount*." *Id.* (emphasis added). WFA also plainly discloses that its interests in the CSP conflict with clients' interests, explaining that lower rates are financially beneficial to WFA and consequently it "may choose to make available the Cash Sweep Options that are more profitable to us and our affiliates than other money market mutual funds or bank deposit accounts." *Id.* Plaintiffs further acknowledged that WFA "has an incentive to pay lower interest rates to participating accounts." *Id.* Thus, the conflicts of interest about which Plaintiffs complain were fully disclosed and *accepted* by Plaintiffs as part of their contractual relationship with WFA.

**Plaintiffs' Duty to Monitor their CSP Accounts**. Plaintiffs agreed and acknowledged that they "must monitor" their CSP accounts and that "[WFA] does not have a duty to affirmatively advise [them] on whether to use the Cash Sweep Program." RJN Ex. 4 at 5; *see also* RJN Ex. 6 at 3 (WFA "does not have any duty to monitor the Cash Sweep Vehicle for your account or make recommendations about, or changes to, the Cash Sweep Program that might be beneficial to you"). WFA also encouraged Plaintiffs to consider alternative investments, stating that they "may elect not to participate in the Cash Sweep Program and/or periodically invest cash balances directly in available money market mutual funds or other products offered as direct investments outside of the Cash Sweep Program, options which likely generate a higher rate of interest or yield than the Cash Sweep Program." RJN Ex. 7 at 4. At any point Plaintiffs could have invested their idle cash, withdrawn it, withdrawn from the CSP, or closed their accounts. RJN Ex. 4 at 2, 4–5. All of these decisions would be made by Plaintiffs on a fully informed basis, as the current CSP rates were always publicly posted (*id.* at 2), and the rates and actual interest earned on Plaintiffs' CSP assets are also included in Plaintiffs' account statements. *See* RJN Ex. 2 § I.4 ("We will provide you with an Account statement quarterly or monthly in the months in which activity occurs in your

6

Account."); Ex. 4 at 5 ("Your account statement will indicate your balance, detail transactions, and reflect interest or dividends relating to your Cash Sweep Option.").  Plaintiffs are regularly provided account statements that identify, among other things, (i) the  annual percentage yield earned on cash in the CSP for that month, (ii) an explanation of what that figure means and how it is calculated, (iii) their total "Cash and Sweep Balances" including the current market value and the estimated annual income, and (iv) "Cash sweep activity," showing the beginning and ending balances for Plaintiffs' CSP assets.  RJN Ex. 8 at 5; Ex. 9 at 7; Ex. 10 at 7

## III.   PLAINTIFFS' CONSOLIDATED COMPLAINT SHOULD BE DISMISSED

To survive dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While the Court must accept a complaint's well-pled allegations as true, that does not extend to conclusory allegations, unreasonable inferences, or legal conclusions.  *Id.*

### A.   Plaintiffs' Claims Arising Four Years or More Before the Complaint are Time-Barred

California's statutes of limitations apply as the law of the state in which this Court sits.  *See Lee v. Batal*, No. 22-cv-2988, 2022 WL 18231686, at *2 (C.D. Cal. Dec. 2, 2022) (citing *In re Sterba*, 852 F.3d 1175, 1178–80 (9th Cir. 2017)) ("[F]ederal courts in the Ninth Circuit apply the statute of limitations rules of the forum state."); *Wakefield v. Wells Fargo & Co.*, No. 13-cv-5053, 2014 WL 5077134, at *8 (N.D. Cal. Oct. 9, 2014) (applying California's statute of limitations and related tolling rules).[5]  California has a four-year statute of limitations for breach of contract,

---

[5] The same is true under New York law.  *See Molnar v. Greentech Capital Advisors, L.P.*, No. 650242/2020, 2022 N.Y. Misc. LEXIS 37071, at *2–3 (Sup. Ct. Mar. 3, 2022) ("Choice-of-law provisions in contracts do not apply to statutes of limitations, unless a provision expressly includes it" and in such a case "the law of the forum applies because the statute of limitations is a procedural

breach of fiduciary duty, and unjust enrichment claims. *Assurance Indus. Co. v. Snag, Inc.*, No. 10-cv-1718, 2010 WL 4055925, at *3 (N.D. Cal. Oct. 14, 2010) (breach of contract under Cal. Civ. Proc. Code § 337); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) (breach of fiduciary duty under Cal. Civ. Proc. Code § 343)); *Focus 15, LLC v. Nico Corp.*, No. 21-cv-1493, 2022 WL 267441, at *30 (N.D. Cal. Jan. 28, 2022) (unjust enrichment claim "deriving from a written contract" under Cal. Civ. Proc. Code § 337). A claim accrues "when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). Here, WFA's current rates were provided in Plaintiffs' periodic account statements and always available on WFA's public website or from a financial advisor. Plaintiffs thus had reason not just to suspect but to *know* the basis for their present allegations at all times, and they make no allegation to the contrary. *Id.* Accordingly, all Plaintiffs' claims arising before July 25, 2021 (*i.e.*, four years before the first Complaint was filed) are barred. Because Plaintiffs assert claims going back to August 1, 2018 (CC ¶ 152), the statute of limitations eliminates approximately three years of Plaintiffs' claims.

### B.   The Breach of Contract Claim Fails

To state a claim for breach of contract under New York law,[6] Plaintiffs must plead the existence of a contractual duty, performance by plaintiff, breach by defendant, and damages. *Lapa v. JP Morgan Chase Bank, N.A.*, No. 21-cv-4737, 2023 WL 4706827, at *3 (S.D.N.Y. July 22, 2023) (citation omitted). Plaintiffs' allegations cannot satisfy these requirements.

---

matter."). The Agreements' New York choice-of-law provision here does not include New York's statute of limitations. RJN Ex. 2 § I.36.

[6] It is undisputed that New York substantive law governs Plaintiffs' claims. CC ¶ 100.

1.    **WFA Is Not Obligated to Obtain any Particular Rate on CSP Accounts**

The core problem with Plaintiffs' contract claim is that there is no obligation in the Agreements for WFA to provide any particular rate on CSP deposits. No specific rates are promised, or even mentioned, anywhere in the Agreements. Plaintiffs agreed and acknowledged that rates will vary under the CSP, that higher rates could be obtained elsewhere, that current rates were always publicly available online and in their account statements, and that they should speak to a WFA investment professional if they want to seek to maximize their returns on uninvested cash outside the CSP. All of this was hardwired into the contractual relationship between Plaintiffs and WFA, and any suggestion that duties inconsistent with those terms could give rise to a breach claim is untenable. *See DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07-cv-318, 2009 WL 2242605, at \*37, \*42 (S.D.N.Y. July 27, 2009) (dismissing contract claims related to cash sweeps where "Plaintiffs ha[d] not identified any agreement that could support a reasonable expectation that Defendants were obligated to maximize Plaintiffs' earnings on *uninvested* funds in their brokerage accounts") (emphasis in original).

Plaintiffs rely heavily on one statement in the CSP Disclosure: "By making the Cash Sweep Program available, [WFA] assumes no obligation to seek or negotiate interest rates in excess of any reasonable rate of interest the Affiliated Banks are willing to credit." RJN Ex. 4 at 5. Plaintiffs assert that this disclosure requires WFA to "secure and pay a reasonable rate of interest to all of its clients through the Cash Sweep Program." CC ¶ 57. It does not. This language highlights an obligation that WFA is *not* assuming, which is the opposite of a binding obligation on WFA to pay any specific rate, let alone a higher one. Any inference that Plaintiffs seek to draw from this language is far from a "clear and unambiguous promise" that could support a contract claim. *Baltia Air Lines, Inc. v. CIBC Oppenheimer Corp.*, 709 N.Y.S.2d 54, 55 (1st Dep't 2000) (finding that a disclosure required by underlying clearing agreement "did not give rise to a

9

contract" because "the disclosure . . . did not include any clear and unambiguous promise"); *see also Martin Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained."); *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 415–17 (2d Cir. 2023) (dismissing contract claim alleging failure to provide "competitive" rates, because "'competitive' is a broad and general term that [was] not defined in the Agreement" and thus "lack[ed] the definiteness that New York law requires to make it enforceable"). This language also cannot be read to state an affirmative obligation to provide rates at a specific or higher level in light of the Agreements' other terms. *Aiello v. Burns Int'l Sec. Servs Corp.*, 973 N.Y.S.2d 88, 95 (2d Dep't 2013) (contract terms are not to be considered in isolation, but in the context of the overall agreement). Moreover, the Parties' course of conduct, including Plaintiffs' acceptance of the interest paid throughout the seven-year proposed class period, further confirms that this disclosure cannot plausibly be interpreted as requiring WFA to provide any particular (or higher) rate of interest. *Id.* (finding that the "parties' mutual consent and course of conduct" supplied "the particulars" of a provision in underlying contract).

### a.     The Reg BI Disclosure Is Not a Contractual Commitment

Finding no support in the Agreements, Plaintiffs' alternative theory is that WFA "contracted" to follow Reg BI and thereby promised a certain CSP rate. CC ¶ 51–52. Reg BI is a regulation promulgated under the Securities Exchange Act of 1934 requiring, among other things, that broker-dealers act in brokerage clients' "best interest" when recommending a "securities" transaction or "securities" investment strategy to a client. 17 C.F.R. § 240.151-l(a). WFA's Reg BI Disclosure does not support Plaintiffs' claims here.

First, Plaintiffs allege no "recommendation" by WFA, and the CSP is not in and of itself a "securities" investment. On this basis alone, Reg BI does not apply here.

10

Second, there is no private right of action under Reg BI, and Plaintiffs cannot manufacture a claim by shoehorning Reg BI into the Agreements. *See Allen v. Fid. Brokerage Servs. LLC*, 711 F. Supp. 3d 219, 224 & n.5 (S.D.N.Y. 2024) (rejecting private action under Reg BI because "the SEC's promulgation of [Reg BI] specifically disclaimed that it 'creates any new private right of action'"); Regulation Best Interest, 84 Fed. Reg. 33318, 33327 (July 12, 2019) (Reg BI does not "create[] any new private right of action or right of rescission, nor do we intend such a result"). WFA's Reg BI Disclosure thus cannot be a "contract to follow Regulation Best Interest" (CC ¶ 63), and Plaintiffs are not permitted "to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198 (2d Cir. 2005) (affirming dismissal of contract claim based on a statute with no private right of action); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (Plaintiffs cannot "circumvent the lack of a private right of action for violations of industry rules merely by recasting [their] claim as a violation of a common law duty"); *DeBlasio*, 2009 WL 2242605, at *38 n.17 (finding that even when NYSE and FINRA predecessor rules "are incorporated into a customer agreement, they do not bring with them a right to sue for an infraction") (citations omitted).

Third, the Reg BI Disclosure contains no contractual promise to pay a particular rate on cash or on any other asset. *See* CC ¶ 52 (citing RJN Ex.11 at 18 ("While we have policies and procedures designed to pay a reasonable rate of interest based on prevailing interest rates at other or similar financial services firms, our rates are not always the highest interest rates available.")).[7] The Reg BI Disclosure describes certain policies and procedures and warns that WFA's rates may

---

[7] As discussed below, in any case WFA *did* pay rates based on prevailing rates at other or similar financial services firms. *See infra* § III.B.3.

11

be *lower* than others.    Such regulatory disclosures without a clear promise do not create a contractual obligation.  *See Hauptman v. Interactive Brokers, LLC*, No. 12-cv-9382, 2018 WL 4278345, at *7–8 (S.D.N.Y. June 12, 2018) (dismissing contract claim and finding no contractual obligations imposed by disclosures based on FINRA regulatory guidance); *Baltia*, 709 N.Y.S.2d at 55 (dismissing contract claim based on disclosures required by federal law that lacked "any clear and unambiguous promise"); *O'Connor v. Henkel Corp.*, No. 14-cv-5547, 2015 WL 5922183, at *10 (E.D.N.Y. Sept. 22, 2015) (rejecting express warranty claims based on federally mandated labels in part because they were required disclosures and thus not voluntarily undertaken promises).[8]

### b.    The IRA Disclosures Disclaim Any Obligation to Obtain Higher Rates

Plaintiffs also invoke disclosures which state that uninvested cash swept out of clients' IRA accounts will "bear a reasonable rate of interest."  CC ¶ 59; RJN Ex. 12 at 15.  This disclosure language is mandated by a statutory tax exemption under the Internal Revenue Code ("IRC") to ensure IRA clients receive favorable tax treatment.  *See* 26 U.S.C. § 4975(d)(4) (providing a tax exemption for cash swept from retirement accounts that are held with an affiliate and "bear a reasonable interest rate"); 26 C.F.R. § 54.4975-6(b)(1).  This invocation of the Section 4975 tax exemption is not a contractual promise creating any rights or duties between the parties.  Nor could Plaintiffs assert a claim premised on such disclosures as there is also no private right of action under Section 4975.  *See Le Bouteiller v. Bank of New York Mellon*, No. 14-cv-6013, 2015 WL 5334269, at *8 (S.D.N.Y. Sep. 11, 2015) (no private right of action under the IRC); *see also*

---

[8] Additionally, the Reg BI Disclosure states "[t]his disclosure does not otherwise change, alter or modify . . . the terms and conditions of any client agreement(s) you enter into with us."  RJN Ex. 13 at 1.  Accordingly, the terms of the Agreements noted above control the scope of the Parties' agreement.

*Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming dismissal of contract claims that were an impermissible "end run" around statute without a private right of action); *Broder*, 418 F.3d at 198; *DeBlasio*, 2009 WL 2242605, at *38 n.17.

### 2.    WFA's Policies and Procedures Did Not Promise any Particular Rate on CSP Accounts

Plaintiffs' claim that WFA "specifically promised," via the December 2019 version of the Account Disclosures, that it would maintain particular policies and procedures with respect to its CSP conflicts is also misplaced.  CC ¶¶ 36-38.  The language Plaintiffs cite is not related to the CSP.  *See* RJN Ex. 14 at 4 ("We seek to address this and other conflicts of interest through a combination of disclosing them to you and through our policies and procedures and related controls reasonably designed to mitigate conflicts of interest.").  The language relates to "Costs for brokerage accounts" and WFA's financial incentive to recommend that clients "purchase investment products for which we will receive higher fees or commissions."  RJN Ex. 14 at 3–4. In any case, this type of informational disclosure is not a "promise" to do anything, much less offer any specific rates in the CSP.  *See Hauptman*, 2018 WL 4278345, at *7; *Baltia*, 709 N.Y.S.2d at 55; *O'Connor*, 2015 WL 5922183, at *10.

### 3.    Plaintiffs' Allegations that WFA Violated the Agreements Fail

In any event, Plaintiffs have not plausibly alleged that the rates paid were unreasonable.

First, Plaintiffs' references to different products and rates from unnamed and cherry-picked brokerage firms cannot show that WFA's CSP rates were unreasonable or that WFA "did not follow 'policies and procedures designed to pay a reasonable rate of interest based on prevailing interest rates at other or similar financial services firms.'"  CC ¶ 116.  *See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998, 2023 WL4239073, at *5 (S.D.N.Y. June 28, 2023) (rejecting comparison of money market funds rates and cash sweep rates, finding that "Plaintiff

cannot use the interest rate paid on one type of investment vehicle to prove that the interest rate paid on a different type of investment vehicle is not reasonable"); *Singh v. Deloitte LLP*, 123 F.4th 88, 95 (2d Cir. 2024) (noting plaintiffs' allegations were not "apple-to-apple" comparisons and affirming dismissal of ERISA claims); *Cunningham v. USI Ins. Servs., LLC*, No. 21-cv-1819, 2023 WL 8603123, at *7 (S.D.N.Y. Dec. 12, 2023) (dismissing breach claim where plaintiffs relied on "apples-to-oranges comparisons").

Plaintiffs refer to the Federal Funds Rate, short-term US treasury bill yields, and repurchase agreement overnight rates, but those are simply not comparable, as they differ from bank deposit accounts in terms of liquidity, risk, and lack of FDIC insurance (and in the case of the Federal Funds rate, is not even offered to individual investors). *See, e.g.*, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-cv-7998, 2021 WL 240737, at *2 (S.D.N.Y. Jan. 25, 2021) (denying leave to amend complaint to add allegations regarding interest rates on treasury bills and other investment products because such comparisons "are irrelevant to whether the rate paid on Plaintiff's money market deposit account was reasonable"). Nor do Plaintiffs credibly attempt to allege or explain how these could be apt comparators to a bank deposit cash sweep vehicle.[9]

Plaintiffs also refer to an "index" of five unnamed firms' cash sweep rates, as well as Vanguard's current rates and Fidelity's rates in January 2024 and year-end 2022, which were allegedly higher than WFA's CSP rates. CC ¶¶ 117, 119. But Plaintiffs make no allegation that the sweep programs of the firms in this "index," or Vanguard or Fidelity, are comparable to the CSP.

---

[9] Plaintiffs cite to a Department of Labor definition of "reasonable" rate of interest (CC ¶ 65), but that definition is from a bespoke advisory opinion issued to Deutsche Bank in 2003, regarding the sweeping of foreign currency assets into offshore deposits, all entirely unrelated to WFA's CSP.

A comparison to WFA's *actual* competitors can be easily done by referring to the rates that WFA's competitors are alleged to have paid in the other cash sweep actions filed around the country, including in other complaints filed by lead interim counsel in this action.[10] These other cases reflect that the rates provided by JP Morgan, Morgan Stanley, Merrill Lynch, PNC, LPL Financial, Ameriprise, and UBS are virtually the same as WFA's, and render Plaintiffs' claims implausible.[11]

Second, while Plaintiffs claim that the returns WFA retains somehow violate an obligation not to charge "excessive fees" on brokerage accounts (CC ¶¶ 68, 103-04), these returns are not "fees" charged to Plaintiffs,[12] and there is nothing inappropriate about WFA financially benefiting

---

[10] The Court may take judicial notice of the allegations in those other pending cases. *See Tellabs*, 551 U.S. at 322; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of other court filings as evidence of what was litigated in those cases).

[11] Plaintiffs allege that WFA paid rates between *.01%* and *.24%* during the relevant period. CC ¶ 125. These are the same rates paid by WFA's actual competitors. *See Bodea v. JPMorgan*, No. 24-cv-6404, ECF No. 69, RJN Ex. 15 (Consolidated Complaint filed by the same attorneys as Plaintiffs' here) (S.D.N.Y. Mar. 28, 2025) (alleging that JPMorgan pays *.01%* interest on cash sweep accounts); *Sherlip Estate v. Morgan Stanley*, No. 24-cv-4571, ECF No. 40, RJN Ex. 16 (Amended Complaint filed by the same attorneys as Plaintiffs' here) (S.D.N.Y. Oct. 10, 2024) (alleging Morgan Stanley pays *.01%* interest on cash sweep accounts); *McCrary v. Merrill Lynch*, No. 23-cv-10768, ECF No. 1, RJN Ex. 17 (Complaint) (S.D.N.Y. Dec. 11, 2023) (alleging Merrill Lynch pays *.01%* on cash sweep accounts in its lowest asset tier); *Vallin v. PNC*, No. 24-cv-1295, ECF No. 43, EJN Ex. 18 (Second Amended Complaint) (W.D. Pa. Dec. 13, 2024) (alleging that PNC pays *.05%* interest on cash sweep accounts in its lowest asset tier for brokerage accounts and *.33%* for advisory accounts); *Peters v. LPL Financial*, No. 24-cv-1228, ECF No. 38, RJN Ex. 19 (Amended Complaint filed by the same attorneys as Plaintiffs' here) (S.D. Cal. Dec. 12, 2024) (alleging that LPL pays *.20%* interest on cash sweep accounts in its lowest asset tier); *Mehlman v. Ameriprise*, No. 24-cv-3018, ECF No. 58, RJN Ex. 20 (Amended Complaint filed by the same attorneys as Plaintiffs' here) (D. Minn. Nov. 4, 2024) (alleging that Ameriprise pays *.03%* interest on cash sweep accounts in its lowest asset tier); *Goldsmith v. UBS Financial Services*, No. 24-cv-6354, ECF No. 48, RJN Ex. 21 (Amended Complaint filed by the same attorneys as Plaintiffs' here) (S.D.N.Y. Feb. 28, 2025) (alleging that UBS pays *.04%* on its lowest asset tier).

[12] The disclosures regarding "excessive fees" on which Plaintiffs rely (CC ¶ 68) are based on FINRA Rules, which in no way relate to the CSP, and do not constitute a contractual promise. *See supra* § II.A.1; *DeBlasio*, 2009 WL 2242605, at *38 n.17.

15

from the CSP as the Agreements fully disclosed.  *See* RJN Ex. 4 at 5–6.  Indeed, a "financial institution using money deposited with it to obtain earnings is neither unknown nor unexpected, much less nefarious." *Levitin v. Painewebber, Inc,* 159 F.3d 698, 703 (2d Cir. 1998) (noting that "[s]ome bank accounts are not interest-bearing . . . even though the balances in such accounts are used by banks to earn money"  but "[t]hat is precisely how banks make money" and "[n]one of these routine practices is regarded as deceptive or even unusual").

Third, the SEC's Order (the "Order") relating to WFA is not "equally applicable" (CC ¶ 142) to Plaintiffs' claims in this action.[13]  Per the Order, the SEC found a violation of Section 206(4) of the Investment Advisers Act of 1940 ("IAA") and Rule 206(4)-7 promulgated thereunder, which requires investment advisers to have written policies and procedures "reasonably designed to prevent violation . . . of the [IAA]."  15 U.S.C. § 80b-6; 17 C.F.R. § 275.206(4)-7.  The Order is notable for what it does not say.  There is no finding that WFA violated the substantive provisions of the IAA, or that it violated its fiduciary duty to any client, or that any clients were harmed by WFA's allegedly deficient policies and procedures.  Nor was there any finding regarding a breach of contractual obligations, or that WFA *in fact* failed to consider or to act in clients' best interests.  Most importantly, there was no finding that the interest rates paid on CSP accounts were unreasonable or violated the IAA or any of WFA's duties or obligations.

In addition, the Order is express that WFA did not admit or deny its findings.  RJN Ex 22 at 1.  Such a consensual resolution of a SEC administrative proceeding is irrelevant to and cannot support Plaintiffs' allegations.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-cv-3723, 2013 WL 1294668, at *14 (S.D.N.Y. Mar. 28, 2013) (finding that allegations "that

---

[13] As Plaintiffs concede (CC ¶ 137), the Order only relates to advisory (*i.e.*, managed) accounts, and not to brokerage (*i.e.*, non-managed) accounts.  *See* RJN Ex. 22 at 2.

16

rely on the SEC Order" are not a "proper basis" for a Complaint and granting motion to dismiss), *rev'd in part on other grounds*, 797 F.3d 160 (2d Cir. 2015); *In re Blech Sec. Litig.*, No. 94-cv-7696, 2003 WL 1610775, at \*11 (S.D.N.Y. Mar. 26, 2003) (excluding SEC consent orders and stating "SEC judgments are inadmissible under Federal Rule of Evidence 408"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("references to . . . administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)"); *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. Aug. 29, 2012) (finding that SEC consent orders, whereby defendants neither admitted nor denied allegations in SEC's complaint against them, were not a proper basis for Plaintiffs' allegations and dismissing claims that were based on those SEC orders).

## C.   Plaintiffs' Implied Covenant Claim Fails

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2022) (citation omitted). Plaintiffs' implied covenant claim is therefore barred. *See Hauptman*, 2018 WL 4278345, at \*8 (dismissing good faith and fair dealing claim as duplicative and finding such a claim must be dismissed "even if the contract claim is also 'insufficient' to survive a motion to dismiss").

In addition, the implied covenant "cannot be used to 'imply obligations inconsistent with other terms of the contractual relationship.'" *Singh v. City of New York*, 40 N.Y.3d 138, 144–47 (2023) (citation omitted). Here, Plaintiffs' claim is precluded by the express terms of the Agreements, which provided that CSP rates will vary, that higher rates could be obtained elsewhere, that the rates being paid were always public and available online and provided in

17

periodic account statements, that clients should speak to a WFA investment professional if they want to maximize their returns on cash, that WFA financially benefits from the spread earned on the CSP assets and from payments WFA receives from the CSP banks, that WFA has a conflict of interest with respect to the CSP, that WFA takes no responsibility to advise clients with respect to the CSP, and that the CSP is totally optional to the client.  In light of these terms, Plaintiffs' allegations do not come close to stating a claim that WFA failed to deal fairly or in good faith. *See, e.g.*, *Levitin*, 159 F.3d at 703; *Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03-cv-4556, 2005 WL 497787, at *6, *9 (S.D.N.Y. Mar. 2, 2005) (dismissing implied covenant claims against broker that "was acting at all times in accordance" with client agreement); *DeBlasio*, 2009 WL 2242605, at *39, *42 (dismissing implied covenant claim where plaintiffs failed to "identif[y] any contract-based expectation—implied or otherwise—that was harmed by the implementation of Defendants' Cash Sweep Programs or the profits allegedly earned by Defendants").

### D.    Plaintiffs Have Waived Any Alleged Contractual Rights to Claim a Higher Rate of Interest

Even if there were an obligation for WFA to pay rates at a particular level (and there is not), Plaintiffs have waived or should be estopped from asserting any claim that the rates they received were inadequate.  It is well-established under New York law that "[c]ontractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned . . . and [s]uch abandonment may be established by . . . failure to act so as to evince an intent not to claim a purported advantage."  *Kamco Supply Corp. v. On the Right Track, LLC*, 49 N.Y.S.3d 721, 730 (2d Dep't 2017) (finding that parties' repeated acceptance of conduct that did not accord with parties' contract constituted waiver).  Waiver is an equitable doctrine "designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then either suing for noncompliance or demanding compliance." *Id.*

18

at 727; *see also Oceana Holding Corp. v. A. Oceana Co. Ins.*, 4 Misc. 3d 1029(A), at \*5 (Civ. Ct. Kings Cnty. Sept. 30, 2004) (a plaintiff's "[u]nexplained delay" in asserting contractual rights "is evidence of waiver and acquiescence in non-performance") (citation omitted).

Plaintiffs allege that they opened investment accounts with WFA in 2007, 2011, and 2021 and that they agreed to participate in the CSP upon opening those accounts. CC ¶¶ 18–20. Plaintiffs also allege that for certain periods, WFA's CSP rates diverged from the Federal Funds Rate and other market rates, "demonstrat[ing]" that WFA's rates "were not 'reasonable,'" including for significant periods from 2018 through the present. CC ¶¶ 126–27. However, Plaintiffs do not allege that they *ever* raised any issue regarding the interest they received despite knowing at all times the current interest rates and exactly how much interest they were earning as reflected in their account statements. *See supra* at 6–7. Plaintiffs cannot now claim in hindsight that the interest rates they accepted throughout the last seven years were too low.

### E.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty

Plaintiffs' fiduciary duty claim should be dismissed because it is substantively identical to their contract claim. *See Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.,* 602 F. Supp. 3d 663, 679 (S.D.N.Y. 2022) ("[A] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.") (quotation omitted); *Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) ("[A] breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim.") (citation omitted). While the fiduciary duty claim fails on that basis alone, Plaintiffs' allegations are also defective.

The Agreements set forth the scope of the Parties' relationship and duties as they relate to the CSP. This precludes any claims to the contrary, as it "is well settled that parties may limit the

scope of fiduciary duties by contract." *Spencer-Smith v. Ehrlich*, No. 23-cv-2652, 2024 WL 709291, at *7 n.6 (S.D.N.Y. Feb. 21, 2024); *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, SEC Release No. IA-5248, 84 Fed. Reg. 33669, 33671 & n.26 (July 12, 2019) (an adviser's fiduciary duty "follows the contours of the relationship between the adviser and its client" which they "may shape . . . by agreement"). Furthermore, when "the parties' relationship originated in contract, a plaintiff suing for breach of fiduciary duty must prove that the parties 'created a relationship of higher trust than would arise from [their contract] alone.'" *Snyder v. Wells Fargo Bank, N.A.*, 594 F. App'x 710, 712 (2d Cir. 2014) (citation omitted). Plaintiffs' allegations do not demonstrate that.

Plaintiffs assert that by disclosing its conflict related to the CSP, WFA somehow "acknowledged a fiduciary duty to all clients to address it." CC ¶ 38. This is a *non-sequitur*. Disclosing a conflict of interest does not create or implicate any fiduciary duty, much less support a breach of one. *See Bai Wen v. N.Y.C. Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 549 (S.D.N.Y. 2023) ("A breach of fiduciary duty claim may not be based on a conflict of interest or even self-dealing where the conflict was specifically disclosed . . . .") (citation omitted); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, 98-cv-6907, 2000 WL 335557, at *32 (S.D.N.Y. Mar. 30, 2000) (rejecting plaintiff's argument that a conflict of interest gave rise to a fiduciary duty and noting that "if a conflict of interest could itself create a fiduciary duty, almost every contractual relationship would be a fiduciary relationship"); Restatement (Third) of Agency § 8.06 (2006) (having a conflict of interest itself "does not constitute a breach of duty" if all material facts are disclosed and the "principal consents to the conduct").

Plaintiffs also rely on the word "agent" in the CSP Disclosures. CC ¶¶ 83–84. But that reference has nothing to do with CSP rates and is limited to the mechanics of the CSP. Specifically,

20

WFA is made an "agent in establishing and maintaining the Bank Deposit Sweep Programs, including making deposits to and withdrawals from the Bank Deposit Sweep Programs." RJN Ex. 4 at 9. This authorization of WFA to move funds in and out of the CSP on behalf of clients is a typical bank deposit authorization that does not create any broader fiduciary duty. *Crigger v. Fahnestock & Co., Inc.*, No. 01-cv-7819, 2003 WL 22170607, at \*10 (S.D.N.Y. Sept. 1, 2003) ("Where the broker is not recommending investments to the client, but rather acting primarily as a banker . . . a fiduciary duty is not created."). Likewise, Plaintiffs' assertion that WFA had "*de facto* control over its clients' accounts" by determining "which Cash Sweep Program options were available" and "the eligibility of its clients," which allegedly "gave rise to a fiduciary relationship" (CC ¶ 83–89) also fails. All of this was spelled out in the Agreements which form the basis for Plaintiffs' contract claims, and it cannot also give rise to a fiduciary duty claim. *See Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 820 (S.D.N.Y. 2019) (where plaintiffs allege that fiduciary duty arises from "a comprehensive written contract between the parties," the fiduciary duty claim is necessarily "duplicative of a claim for breach of contract and must be dismissed") (citation omitted).

Recognizing that the Agreements do not support their fiduciary duty claims, Plaintiffs invoke a number of external sources that are likewise inapplicable.

> **a.** **Reg BI Does Not Support Plaintiffs' Breach of Fiduciary Claim with Respect to the Cash Sweep Program**

Plaintiffs' reliance on Reg BI misses the mark. *See, e.g.*, CC ¶¶ 80–82. Reg BI does not impose fiduciary duties—it establishes a "best interest" standard, which only applies when a broker is making a "recommendation of any *securities* transaction or investment strategy involving *securities* . . . ." 17 C.F.R. § 240.151-l(a) (emphasis added); *see supra* § III.A.1.a; Regulation Best Interest, 84 Fed. Reg. at 33333 ("[W]e are not referring to [Reg BI] as a 'fiduciary' standard.");

*see also XY Planning Network, LLC v. U.S. SEC*, 963 F.3d 244, 255 (2d Cir. 2020) (finding that the "SEC carefully considered and rejected a fiduciary rule" in adopting Reg BI). There is also no private right of action to enforce the duties set forth in Reg BI. *See Allen*, 711 F. Supp. 3d at 224 & n.5; Regulation Best Interest, 84 Fed. Reg. at 33327. Here, there is no allegation that WFA made any recommendations under Reg BI regarding the CSP, and the CSP is not a "securities" investment nor an investment strategy of any sort—it is a mechanism to put *uninvested* cash in a bank deposit account. Indeed, far from a recommendation, the Agreements advise clients to monitor their own cash, to talk to a WFA investment professional if they want to maximize returns on uninvested cash, that WFA financially benefits from the spread earned on the CSP assets and from payments WFA receives from the CSP banks, that WFA therefore has a conflict of interest, and that WFA takes no responsibility to advise clients with respect to the CSP.

Contrary to Plaintiffs' assertions, offering the CSP as the default option for clients' uninvested cash does not make it a recommendation.[14] CC ¶ 90. *See, e.g., DeBlasio*, 2009 WL 2242605, at *30–32 (dismissing fiduciary duty claim against brokerage and adviser firms in relation to cash sweep programs and finding defendants had no duty to give "advice regarding how to maximize returns on free credit balances"). Nor does Plaintiffs' reference to certain SEC Staff Bulletins suggest otherwise. CC ¶ 79. The Bulletins mention cash sweep programs only (i) as an "indirect cost" that financial professionals should consider in connection with recommending an investment account; (ii) in a list of "common sources of conflicts of interest"; and (iii) as an "example" of the "facts" that should be "disclosed" with regard to a conflict "concern[ing] compensation or other benefits." RJN Ex. 23 at 5; Ex. 24 at 4. None of this suggests that

---

[14] Indeed, if the CSP was *not* the default option, Plaintiffs' cash would instead sit idly in their investment accounts, without FDIC insurance and generating no interest.

22

establishing an optional cash sweep program (as an alternative to letting clients' cash sit idly, generating no return) constitutes a "securities" investment or securities account recommendation.

> **b.      The IAA and The SEC Order Do Not Give Rise to A Fiduciary Duty Claim on Advisory Clients' Cash Sweep Interest Rates**

Plaintiffs' invocation of the IAA is similarly without merit.

First, as noted above, according to the SEC an adviser's fiduciary duty under the IAA "follows the contours of the relationship between the adviser and its client, and the adviser and its client may shape that relationship by agreement, provided that there is full and fair disclosure and informed consent." *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, SEC Release No. IA-5248, 84 Fed. Reg. 33669, 33671 & n.26 (July 12, 2019); *see also Morton v. Aizenberg*, No. 21-cv-7782, 2024 WL 1892435, at *3 (S.D.N.Y. Apr. 29, 2024) (dismissing claims and finding that "[m]anagers of discretionary investment accounts . . . 'owe their clients a fiduciary duty,' but only insofar as that duty is 'embodied in their agreement with their clients'") (citation omitted).  Here, the contours of the CSP and the relationship between the Parties with respect to the CSP is set forth in extensive detail in the Agreements.  To the extent any fiduciary duty applies here, it is co-extensive with Plaintiffs' contract rights discussed above and no greater.

Second, there is no private right of action to enforce an investment adviser's fiduciary duty under Section 206 of the IAA.  *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 24 (1979).  "In the absence of . . . a private right of action, alleged breaches of regulatory rules do not form the basis for a fiduciary duty."  *Rozsa v. May Davis Group, Inc.,* 187 F. Supp. 2d 123, 129 (S.D.N.Y. 2002); *Valelly*, 464 F. Supp. 3d at 645.  Thus, an investment adviser's fiduciary duty under the IAA does not provide a basis for Plaintiffs' fiduciary duty claim.

<u>Third</u>, the IAA only applies to investment advisers; it has no application to brokerage accounts and thus no bearing on Plaintiffs' claims regarding brokerage accounts (such as Plaintiff Bujold's) in any way. *See Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 660 (S.D.N.Y. 2015) ("The IAA, as its name suggests, applies only to investment advisors . . . .").

### F.     <u>Plaintiffs' Unjust Enrichment Claim Fails</u>

An unjust enrichment claim under New York law requires showing "(1) that the defendant benefitted; (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted).

This claim fails because unjust enrichment can be pled in the alternative only if the validity of the contract is in dispute. *See Spinal Techs., LLC v. Mazor Robotics Inc.*, 624 F. Supp. 3d 330, 343 (W.D.N.Y. 2022) ("Unjust enrichment 'may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract.'") (citation omitted); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.") (citation omitted).

Moreover, Plaintiffs fail to plead facts sufficient to show that WFA benefitted at their expense or that it would be equitable to require restitution. To the contrary, Plaintiffs acknowledge that they received compensation for their uninvested cash in the form of a positive rate of interest. *DeBlasio*, 2009 WL 2242605, at *39–40 (dismissing unjust enrichment claim related to cash sweeps program where plaintiffs failed to plausibly allege defendants were enriched at plaintiffs' expense). Plaintiffs would have received no returns on their uninvested cash without the CSP. Nor can Plaintiffs legitimately complain about WFA receiving a return as part of the CSP, which

24

was always clearly disclosed and precisely how banks operate. *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608–09 (2d Cir. 2024) ("[T]here is nothing inherently unjust about profit generation."); *Levitin*, 159 F.3d at 703; *DeBlasio*, 2009 WL 2242605, at *39–40. Having failed to allege anything unjust or even anything "unusual" about WFA profiting from the CSP, Plaintiffs' unjust enrichment claim fails. *See Atwal v. Nortonlifelock, Inc.*, No. 20-cv-0449, 2022 WL 327471, at *31–32 (W.D.N.Y. Feb. 3, 2022) ("Absent alleged unusual circumstances, Plaintiff lacks a basis to allege the unjust enrichment claim (even in the alternative).").

## G.   **<u>Plaintiffs Fail to State a Claim Against WFC and FiNet</u>**

Plaintiffs allege no independent basis for liability against WFC and FiNet, and as such they should be dismissed from this action. *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 421 n.1 (S.D.N.Y. 2010) (rejecting claims against "parent corporations not engaged in the activities alleged in the Complaint"); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (acknowledging the "general principle of corporate law that a parent corporation . . . is not liable for the acts of its subsidiaries"). WFC is not alleged to have engaged in the challenged conduct, and, notably, is not even mentioned in the SEC Order. As to FiNet, there are no allegations that Plaintiffs ever had accounts there, nor are any FiNet account documents cited in the Complaint.

Dated:   April 24, 2025   WHITE & CASE LLP

By:   */s/ David G. Hille*
        David G. Hille

Attorney for Defendants
Wells Fargo & Company,
Wells Fargo Advisors Financial Network, LLC,
and Wells Fargo Clearing Services, LLC

25