UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Wells Fargo Cash Sweep Litigation. | Case No.  24-cv-04616-VC |
| | **ORDER DENYING MOTION TO CERTIFY CLASS** |
| | Re: Dkt. No. 201 |

The plaintiffs' motion for class certification is denied without prejudice to filing a renewed motion that is consistent with the guidance in this order. This order assumes that the reader is familiar with the facts, the applicable legal standards, and the arguments made by the parties.[1]

Wells Fargo makes several arguments against class certification. Some of these are straightforwardly without merit. Wells Fargo argues that its defenses raise individual issues that will predominate over common issues. But it offers very little evidence to support the potential meritoriousness of its defenses. "That an affirmative defense may arise that affects different class members differently 'does not compel a finding that individual issues predominate over common

---

[1] The plaintiffs' motion for leave to file a reply to the supplemental brief, Dkt. No. 258, is granted, but the Court does not anticipate granting any future motions to file sur-replies in this case. Wells Fargo's initial sealing requests regarding the class certification briefing, Dkt. Nos. 209, 219, and 226, are denied, but its updated sealing request, Dkt. No. 250, and the sealing requests regarding the supplemental briefing, Dkt. Nos. 254 and 261, are granted. The latter sealing requests are much more narrowly tailored and do a better job of only redacting information about Wells Fargo's current rate-setting practices and competitors. The plaintiffs' sealing requests, Dkt. Nos. 200 and 223, are granted because the proposed redactions are limited to the named plaintiffs' personal financial information.

ones.'" *Vincent v. Money Store*, 304 F.R.D. 446, 462 (S.D.N.Y. 2015) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)). Wells Fargo also argues that the plaintiffs' damages expert fails to provide a methodology to determine injury and damages on a classwide basis, but Dr. Saunders' report presents a methodology that will be straightforward to apply classwide.[2]

Additionally, Wells Fargo argues that the named plaintiffs will not be adequate representatives and that their claims are not typical of the proposed class. Each of the named plaintiffs demonstrated in their depositions that they are familiar with the litigation and the claims and that they are committed to vigorously representing the class. Wells Fargo argues that no one is adequate to represent the full retirement subclass because the named plaintiffs only held traditional IRA accounts, but the record does not indicate that Wells Fargo treated the different types of retirement accounts differently in any way that would be relevant to this case. As for typicality, although the named plaintiffs stated that they did not have specific expectations about the rate of return their uninvested cash would earn, there is no indication that their expectations were atypical of other class members.

Wells Fargo's remaining arguments raise more difficult issues.

*Breach of contract claims*. Wells Fargo argues that individual questions will predominate as to the breach of contract claims because individualized evidence will be needed to determine whether the contracts promised a reasonable rate of return on money held in the Cash Sweep Program. The plaintiffs respond that the contracts at issue here are form business contracts that, under New York law, must be interpreted according to the reasonable expectations of the average customer. But, when the language of a contract is ambiguous, New York law allows the use of extrinsic evidence to determine the parties' intent. *Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2015).

---

[2] This is not to suggest that Dr. Saunders' proposed methodology will carry the day or that it's without problems; it's just that his report supports a conclusion that that damages are amenable to classwide resolution.

Here, the contracts do not unambiguously promise a reasonable rate of return. The account documents state that Wells Fargo "assumes no obligation to seek or negotiate interest rates in excess of any reasonable rate of interest the affiliated Program Banks are willing to credit," and that "[w]hile we have policies and procedures designed to pay a reasonable rate of interest based on prevailing interest rates at other or similar financial services firms, our rates are not always the highest interest rates available." It would be reasonable to read these statements to suggest that Wells Fargo would pay reasonable interest rates. But because these statements are made in the context of disclaiming any obligation to provide specific interest rates, it would also be reasonable to read these statements as making no promise regarding interest rates. Because the contract language is ambiguous, extrinsic evidence may be relevant. The plaintiffs argue that courts have certified other cash sweep class actions on the grounds that the customer agreements could be interpreted objectively, but in those cases, either the language in the agreements was clearer than here, or the court did not seem to be presented with the argument that extrinsic evidence could be relevant because the agreements were ambiguous. *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2026 WL 534287, at *1 (S.D.N.Y. Feb. 26, 2026) ("The interest paid on retirement account assets will be at no less than a reasonable rate."); *Liberty Capital Group v. Oppenheimer & Co.*, 811 F.Supp.3d 647, 664-65 (S.D.N.Y. 2025).[3]

Although extrinsic evidence could be used to interpret the contract's meaning, this does not defeat predominance for most of the proposed class. Wells Fargo has not offered any individualized, extrinsic evidence about the expectations or course of conduct of the non-advisory customers in the proposed class. This is unsurprising, because it's highly unlikely that customers who invest money with Wells Fargo but do not have advisory relationships with the company would have communications that would shed light on their understanding of their

---

[3] If there is no extrinsic evidence that would shed meaningful light on the class members' understanding of the contract, the Court would be pretty strongly inclined to rule that the better reading of the contract is that it promises a reasonable rate of return. This reading would also be consistent with the principle that an ambiguous contract should generally be construed against the drafter. *See Cowen & Co. v. Anderson*, 76 N.Y.2d 318, 323 (N.Y. 1990).

contract with Wells Fargo.

As for the subclass of people who had an advisory relationship with Wells Fargo, individual issues are likely to predominate. Wells Fargo presents evidence of communications with advisory clients in which advisors informed clients about the low interest rates in the Cash Sweep Program and clients discussed their reasons for wanting to keep money in the program regardless. This type of evidence could defeat the plaintiffs' theory that Wells Fargo promised those clients a reasonable rate of interest. Therefore, as to the breach of contract claims for the Advisory Subclass, the plaintiffs have not established that common issues will predominate. *See Aronstein v. Massachusetts Mutual Life Insurance Company*, 15 F.4th 527, 533-35 (1st Cir. 2021) (upholding denial of class certification due to the relevance of extrinsic evidence in interpreting an ambiguous form contract).

*Breach of implied covenant claims*. The analysis for these claims is largely the same as the analysis for the breach of contract claims. As for the non-advisory customers, it's highly unlikely that there will be any meaningful individualized evidence about the customers' expectations and intent when they started investing with Wells Fargo. As for the Advisory Subclass, the likely prevalence of individualized evidence about the clients' communications with their advisors, which will be relevant to the clients' expectations about the interest rates in the Cash Sweep Program, means that individual issues will not predominate.

*Breach of fiduciary duty claims*. At the class certification hearing, the plaintiffs clarified that their theory of breach of fiduciary duty is narrower than what the Court previously understood. They contend that Wells Fargo breached its fiduciary duty simply by offering its advisory clients unreasonably low interest rates in the Cash Sweep Program. Although this narrower theory limits some of the potential individual issues, individual issues are still likely to be significant. To prevail on their breach of fiduciary duty claims, the plaintiffs need to prove that Wells Fargo's breach caused their injury. *See Gall v. Colon-Sylvain*, 151 A.D.3d 698, 700 (N.Y.A.D. 2 Dept. 2017). Individualized evidence about communications between Wells Fargo and its advisory clients, such as evidence that advisors told clients about the Cash Sweep

Program's low interest rates and that clients chose to keep money there anyway, would at the very least be relevant to the causation element of the plaintiffs' claims.

Accordingly, because individual issues are likely to predominate for each of the three claims brought by the Advisory Subclass, the motion for class certification is denied as to the Advisory Subclass.

*Statute of limitations*. There is one fundamental problem with the motion for class certification that requires denial of the motion as to the entire class. The plaintiffs seek to certify a nationwide class based on New York law. Wells Fargo argues that New York's borrowing statute makes a multistate class action unmanageable, because the borrowing statute would require an inquiry into the statutes of limitations in each state where class members resided. The plaintiffs have not established that the class would be manageable despite the application of New York's borrowing statute.

As an initial matter, the Court agrees with Wells Fargo that New York's borrowing statute applies to the plaintiffs' claims. The borrowing statute specifies that when a non-New York resident brings a claim that accrued outside New York, the claim must be timely under the limitation periods of both New York and the state where the claim accrued. N.Y. C.P.L.R. § 202; *Global Financial Corp. v. Triarc Corp.*, 715 N.E.2d 482, 480 (N.Y. 1999). In ruling on the motion to dismiss, this Court concluded that New York's statute of limitations applies to the claims in this case. Dkt. No. 153 at 1-2. The plaintiffs argue here that the borrowing statute is not part of New York's statute of limitations—instead, in their view, it is a choice-of-law statute that the contracts' choice-of-law provision excludes from coverage. But the borrowing statute is better understood as part of New York's statute of limitations, because it sets a limitations period with reference to the limitations period in the state where the claim accrued. *See Hughes Electronics Corp. v. Citibank Delaware*, 120 Cal.App.4th 251, 261 (Cal. App. 2 Dist. 2004). Additionally, the plaintiffs argue that the borrowing statute applies only to claims brought in New York courts. Although some states' borrowing statutes limit their coverage to cases brought in their own courts, New York's borrowing statute contains no such limitation. *See, e.g., Jergens,*

*Inc. v. 5th Axis, Inc.*, 2021 WL 1139417, at *4 (S.D. Cal. Mar. 25, 2021).

Here, a plaintiff's claim "accrued" within the meaning of New York's borrowing statute in the state where the plaintiff resided when they had money in their Cash Sweep account. *See Global Financial Corp.*, 715 N.E.2d at 485. This means that the limitations period would need to be determined for each state in which class members lived during the class period. And this inquiry into state statutes of limitations would affect not only the amount of damages that class members could recover, but also membership in the class. For example, if a person had a Wells Fargo account during the class period but closed the account before the end of the class period, that person's membership in the class would depend on the statute of limitations in the state where they lived. The application of New York's borrowing statute in this case thus creates concerns about the manageability of a class action given the need to resolve numerous questions of state law.

When considering the manageability of a multistate class action that is based on the laws of individual states, the following framework seems useful. First, it is important to figure out whether the state law questions are questions for the jury or the judge to decide. If the jury will need to decide, the class action will likely be unmanageable. Second, if the state law questions are for the judge to decide, the judge often can—with some hard work—figure out the answers to the questions at the class certification stage. Figuring this out at the class certification stage is important where, as here, the state law questions affect the composition of the class. The plaintiffs can satisfy their burden to establish manageability by submitting a fifty-state survey that reliably identifies the sources and applications of state law. If, however, the fifty-state survey is unreliable, or if the plaintiffs do not provide an adequate response to any legitimate problems that the defendant raises about the survey, the Court cannot certify the class because the plaintiffs have not carried their burden of showing manageability.

Here, although the parties haven't discussed it, the state law questions seem to be primarily for the judge to decide, because they require determining the applicable statute of limitations for each claim and whether there are any relevant state doctrines that affect the

limitations period. It therefore seems possible to resolve these questions as part of class certification.

In support of their supplemental briefing on the statute of limitations issue, the plaintiffs submitted charts surveying the statute of limitations for each claim in each of the fifty states.[4] Based on the survey, they propose a class that would include everyone who held money in a Cash Sweep account during their applicable state limitations period. Wells Fargo raises several problems with the plaintiffs' proposed class and their fifty-state survey. Most importantly, Wells Fargo argues that some states do not recognize the continuing breach doctrine—either not at all or not as to contract claims—which means that in those states, plaintiffs who were paid low interest rates outside the state's limitations period are barred from bringing claims for low interest rates paid within the limitations period.

This raises a legitimate problem with the plaintiffs' fifty-state survey, because if a state would not apply the continuing breach theory to the plaintiffs' claims, anyone who was paid low interest rates outside the class period would not be able to bring a claim, unless the state has some other doctrine that would treat the later low interest payments as new breaches. Take South Carolina, for example. Wells Fargo is correct that South Carolina does not recognize the continuing breach doctrine. *Poly-Med, Inc. v. Novus Scientific Pte. Ltd.*, 437 S.C. 343, 351 (S.C. 2022). The logic behind South Carolina's rejection of the doctrine seems to be that it is inconsistent with the discovery rule embedded in South Carolina's statute of limitations, under which the limitations period starts to run when the party knows or should know that the cause of action might exist. *Id.* at 350. The plaintiffs respond that, although South Carolina does not apply the continuing breach doctrine, it recognizes that separate breaches can trigger separate limitations periods, such that class members could bring claims as long as they were paid low interest rates within the state's limitations period. But the plaintiffs have provided no authority to support their counterintuitive assertion that the low interest payments here would be treated as

---

[4] The plaintiffs' supplemental brief clarifies that their proposed class does not cover residents of U.S. territories or foreign countries.

separate breaches under South Carolina law. The Supreme Court of South Carolina explained in *Poly-Med* that whether multiple acts constitute a single breach or separate breaches is a factual question that depends on the intent of the contracting parties, and it suggested that breaches are typically separate when they are breaches of distinct and separate duties. *Id.* at 354. The breaches here—the payment of low interest rates—are identical to each other in form and stem from the same duty.

Similarly, Arkansas does not recognize the continuing breach doctrine. *See Dillard's, Inc. v. Wells Fargo Bank, N.A.*, 2026 WL 550219, at *5 (S.D.N.Y. Feb. 27, 2026); *Beckworth v. Diamante, Private Membership Golf Club, LLC*, 379 S.W.3d 752, 760 (Ark. Ct. App. 2010). The plaintiffs argue that under Arkansas law, their contracts with Wells Fargo are installment contracts, in which each underpayment is a singular breach. But the cases they rely on do not establish that these contracts are installment contracts. In *Pennington v. BHP Billiton Petroleum (Fayetteville), LLC*, the Supreme Court of Arkansas held that monthly oil-and-gas royalty payments are installment contracts and that each underpayment is a separate breach. 631 S.W.3d 555, 558 (Ark. 2021). But the court reached that conclusion only after conducting a fact-specific analysis into the nature of the monthly royalty contract provisions and analogizing them to installment payments in a debtor-creditor relationship. *Id.* And the court distinguished the royalty contract from other cases where Arkansas courts have held that breach-of-contract claims are time-barred because the earliest in a series of identical breaches occurred outside the limitations period. *See, e.g., Beckworth*, 379 S.W.3d at 760 (treating golf club's breach of selling multiple home lots without requiring membership fees as a series of identical breaches). Under the contracts at issue here, Wells Fargo agreed to pay interest on any money that the plaintiffs held in their Cash Sweep accounts, whenever there was money held in those accounts, and the plaintiffs' theory is that Wells Fargo breached by paying lower-than-promised interest rates. It is far from clear that Arkansas law would treat this as an installment contract.[5]

---

[5] The plaintiffs contend that several courts in other cash sweep cases have determined that similar agreements are installment contracts. But in each of the cases cited by the plaintiffs, the

The plaintiffs also propose, as a backup solution, certifying a shorter class period that fits within the shortest state limitations period. But this proposal would not address the problem with differences in states' application of the continuing breach doctrine. The proposal also seems to contemplate the abandonment of a significant portion of the proposed class members in New York and other states with similar limitations periods and no continuing breach issues, which raises questions about whether the named plaintiffs and their counsel are adequately fulfilling their duty to the proposed class members. This is especially true given that there seems to be nothing preventing an alternative approach in which different plaintiffs from states with shorter limitations periods bring separate proposed class actions on behalf of people who resided in those states when they had accounts with Wells Fargo.

Because Wells Fargo has identified legitimate problems with the plaintiffs' state law survey as to at least a couple of the states, and because the plaintiffs have not provided an adequate response as to those states, the Court cannot with confidence determine which potential class members in which states can be part of the class.

Wells Fargo raises a couple additional arguments about the plaintiffs' approach, but they are not barriers to certifying a class. Wells Fargo disagrees with the accuracy of some of the limitations periods reported in the fifty-state survey, such as Hawaii's statute of limitations for breach of implied covenant claims, which Wells Fargo argues is the two-year limitations period for tort claims. In any renewed class certification briefing, the parties should tee up any such disputes for the Court to decide as part of the class certification process.

Wells Fargo also argues that the complexities in determining the states where each class member's claims accrued for purposes of identifying the applicable statute of limitations,

---

court's analysis was specific to one or two states' laws on continuing breach and installment contracts. *Gehring v. Osaic Incorporated*, 2026 WL 248379, at *6-7 (D. Ariz. Jan. 30, 2026) (applying New York and Connecticut law); *Schmidlin v. Raymond James Financial, Inc.*, 2026 WL 847197, at *2 (M.D. Fla. Mar. 27, 2026) (applying Florida law); *Liberty Capital Group v. Oppenheimer Holdings Inc.*, 802 F.Supp.3d 701, 712 (2025) (applying New York law).

particularly as to corporations and trusts, will cause individual questions to predominate over common ones. But these will be straightforward inquiries that can be addressed later in the litigation and will not overwhelm the many common questions in the case.

\* \* \*

Accordingly, the motion for class certification is denied. Denial is with prejudice as to the Advisory Subclass. For the remainder, it is without prejudice. But if the plaintiffs choose to file a renewed motion for class certification, the proposed class must only contain people for whom the plaintiffs can reliably show they would be able to bring claims under the statute of limitations in their state of residence. For example, as to any state for which the plaintiffs cannot reliably show that the state would apply the continuing breach doctrine or some other doctrine treating the breaches here as distinct, the proposed class should only include people who first used the Cash Sweep Program within their state's limitations period.

A zoom case management conference is scheduled for Friday, August 7, at 10 a.m. to discuss how to proceed. A joint case management statement, which does not need to follow the format prescribed by the local rules, is due July 31.

**IT IS SO ORDERED.**

Dated: June 26, 2026

_____
VINCE CHHABRIA
United States District Judge